[No. 27352.   Department Two.   April 27, 1939.]

*In the Matter of the Liquidation of* THE SPOKANE
SAVINGS BANK.[1]

*D. R. Glasgow,* for appellant.

*Joseph J. Lavin* (*Robert Weinstein,* of counsel), for
respondent Eagle Investment Company.

*Robertson & Smith* and *Hart Snyder,* for respondent
Wilson.

SIMPSON, J.—July 29, 1938, Geo. H. Jackson, super-
visor of banking, through his deputy supervisor, H. S.
Wilson, in charge of the liquidation of the Spokane
Savings Bank, petitioned the superior court of Spo-
kane county asking for instructions concerning the
sale of real estate owned by the bank situated in the

[1]Reported in 89 P. (2d) 802.

city of Spokane. In his petition, the supervisor reported two bids for the property. One bid was made by Maurice J. McHugh and wife in the sum of seventy-three thousand dollars, payable ten thousand dollars in cash and the balance at the rate of five hundred dollars or more per month, to include interest at the rate of five per cent per annum, balance to be paid in full at the end of five years, and the seller to pay the first half of the 1938 real estate taxes. It is not necessary to mention the terms of the other bid for the reason that it was not germane to the subsequent litigation.

The court received the petition and set August 5, 1938, as the date for hearing. Upon the day set, the supervisor reported another bid made by the Eagle Investment Company in the sum of $73,075. During the same day, the Eagle Investment Company submitted an additional bid which provided for the payment of $73,075 and the assumption by the buyer of the 1938 taxes both on personal property and on the real property in question. On that day, a hearing was had and an order entered as follows:

"On this 5th day of August, 1938, this cause came regularly on for hearing by the court on report of supervisor on call for bids re Kingston Apartments and after hearing said report and further report and further bids and the court being fully advised in the premises, it is by the court—

"ORDERED, the bid of Maurice J. McHugh and Irene M. McHugh, the same having been increased to $75,000, and the down payment to $11,000, be approved, and the sale authorized, possession to be taken Sept. 1, 1938, and interest to run from said date."

August 8, 1938, the Eagle Investment Company filed a petition asking the court to revoke and set aside the order confirming the sale, giving as reasons therefor that, on August 5th, an agent of the corporation was called by telephone and arrived at the court house

about the time the hearing was to be held; and by reason of the necessity of the computation of figures for the purchase price of the property, there being an amount of the taxes due which could not be accurately computed in the limited time, the agent of the company made a higher and better bid than McHugh, but due to inadvertence and mistake the court accepted the McHugh bid, and that the bid of the Eagle Investment Company, after computing the figures, exceeded the bid of the McHughs by approximately forty dollars. The petitioner then asked that the liquidator of the Spokane Savings Bank be restrained and enjoined from any negotiation until the further order of the court.

The court signed an order restraining the liquidator from negotiating further to transfer the property to McHugh and set the date of August 12, 1938, as the time for the liquidator to show cause why the restraining order should not be made permanent. McHugh filed an answer, in which he took issue with the Eagle Investment Company's petition. August 12, 1938, a hearing was had upon the petition of the Eagle Investment Company, as the result of which the court vacated and set aside the court order confirming the sale to McHugh and provided for another sale to be held August 18, 1938. Upon the date last mentioned, the court, by order, approved a sale to the Eagle Investment Company after it had raised its bid one thousand dollars.

McHugh has appealed from the order setting aside the confirmation of the sale to him, and urges that the court erred in setting aside the order entered August 5, 1938, in directing the liquidator of the bank to receive further bids for the purchase of the property, in directing the liquidator to accept the bid of the Eagle Investment Company made August 18, 1938, and in

holding that there was an inequality between the opportunities of the bidders for the purchase of the property.

At the threshold, we are met with a motion to dismiss the appeal upon the ground that the appeal is from an intermediate and not a final order.

In speaking of the right of appeal from an order confirming the sale, we find the following in 35 C. J. 50, § 68:

"Right of Appeal. Since the order may be considered as a final adjudication, an appeal may lie from an order of confirmation or from an order refusing confirmation thereof."

Additional authorities to the same effect are: *Wood v. Seattle,* 23 Wash. 1, 62 Pac. 135, 52 L. R. A. 369; *Brady v. Ford,* 184 Wash. 467, 52 P. (2d) 319; *State ex rel. Sorenson v. Denton State Bank,* 126 Neb. 486, 253 N. W. 670; *Magann v. Segal,* 92 Fed. 252; 8 Bancroft's Code Practice and Remedies (1928), 8435, § 6376; 16 R. C. L. 80, 113, §§ 59, 81.

The following facts are presented in the record: August 5, 1938, appellant and his attorney appeared before Judge Huneke and raised his original bid one thousand dollars. The court, feeling that appellant had been afforded an opportunity to raise his bid, caused respondent Eagle Investment Company to be notified of that fact by telephone, and a Mr. Cooper, representing respondent, presented himself before the court and was told by appellant's attorney, Mr. Glasgow:

"The bid was $73,000.00, they to pay the last half of the 1938 taxes and your bid was $73,075.00. Now the increase of $1000.00 would make the McHugh bid the high bid."

Mr. Cooper said "By about—," and Mr. Glasgow answered "Ten Dollars." Besides the one thousand dollar increase in appellant's bid, in addition, both

parties raised the amounts of their bids an additional one thousand dollars each. Mr. Cooper said: "That is all right. They can have it," and the court stated to Mr. Glasgow: "That makes your bid seventy-five thousand dollars even."

At the hearing of August 12th, each of the bidders attempted to show that his bid was the better. The difference arose out of the fact that appellant's bid recited that the seller would assume one-half of the 1938 tax, while respondent's bid provided that the buyer would assume all of the 1938 tax.

Computing the net amount of the bids, we find that, deducting the one-half of the real property taxes which appellant did not agree to assume in the sum of $909.05, appellant's total net bid is in the sum of $74,090.95, whereas respondent's net bid is in the sum of $74,075.

Notwithstanding the contention of respondent that appellant did not offer to assume the personal property taxes, a consideration of the bid itself, together with the record, convinces us that the respondent's position is not well taken, and that appellant did agree to assume the 1938 personal property taxes.

It is also true that respondent agreed to pay fourteen thousand dollars in cash, whereas appellant only agreed to pay eleven thousand dollars in cash, and the respective bidders were to pay the balance in installments of five hundred dollars per month, with interest at five per cent per annum thereon until the balance was paid. Even though respondent agreed to assume all of the real property taxes for 1938, and the appellant agreed to assume only one-half of the same, it is clear that appellant's bid was $15.95 higher than that of the respondent. The mere fact that respondent agreed to pay a larger initial cash sum did not preclude a finding that appellant's bid was higher than that of respondent.

The order from which this appeal is taken does not disclose the grounds for the vacation of the order confirming the sale. However, the trial court gave his reasons as follows:

"As I understand a public auction, the terms must be the same to all of the parties. It isn't one thing to one party and another thing to another party. The conditions are the same to all and the terms are the same. That situation didn't prevail here. Even the terms of the bids by one party were not known to the other. Consequently, I don't believe that the sale was conducted under such circumstances that the best results were obtained for the benefit of the liquidation. By reason of that fact, and particularly in view of the fact that one of the parties has stated under all circumstances here this party would be willing to offer an additional $1,000 for the property."

In the liquidation of the assets of a bank, it is the duty both of the liquidator and the court to be solicitous to secure the best price obtainable, but this duty must be discharged prior to the confirmation of the sale. The rule relative to the rights of parties before and after the confirmation of a judicial sale is well stated in *Morrison v. Burnette,* 154 Fed. 617, as follows:

"There is a marked and radical distinction between the situations, the rights of the parties, and the established practice before and after the confirmation of the sale. The purchaser bids with full notice that the sale to him is subject to confirmation by the court and that there is a power granted and a duty imposed upon the judicial tribunal when it comes to decide whether or not the sale shall be confirmed to so exercise its judicial power as to secure for the owners of the property the largest practicable returns. He is aware that his rights as a purchaser are subject to the rational exercise of this discretion. But after the sale is confirmed that discretion has been exercised. The power to sell and the power to determine the price at which the sale shall be made has been exhausted. From thenceforth

the court and the successful bidder occupy the relation of vendor and purchaser in an executed sale, and nothing is sufficient to avoid it which would not set aside a sale of like character between private parties. Hence the rule is settled, and it seems to be universally approved, that after confirmation of a judicial sale neither inadequacy of price, nor offers of better prices, nor anything but fraud, accident, mistake, or some other cause for which equity would avoid a like sale between private parties, will warrant a court in avoiding the confirmation of the sale or in opening the latter and receiving subsequent bids. [Citing cases.]

"This rule is so firmly established that it is no longer debatable, and the cogent and all-sufficient reason for it is that judicial sales would become farces, and rational men would shun them and refuse to bid, if after the confirmation unsuccessful bidders or dissatisfied litigants could avoid them and secure new sales by offers of higher prices, when they thought the purchase a fortunate one, and thus secure the profits in that event, and leave the buyer to suffer the losses if the property depreciated in value or the purchase was unwise."

In *Pewabic Mining Co. v. Mason,* 145 U. S. 349, 36 L. Ed. 732, 12 S. Ct. 887, Justice Brewer laid down the following rule:

"It may be stated generally that there is a measure of discretion in a court of equity, both as to the manner and conditions of such a sale, as well as to ordering or refusing a resale. The chancellor will always make such provisions for notice and other conditions as will in his judgment best protect the rights of all interested, and make the sale most profitable to all; and after a sale has once been made, he will, certainly before confirmation, see that no wrong has been accomplished in and by the manner in which it was conducted. Yet the purpose of the law is that the sale shall be final; and to insure reliance upon such sales, and induce biddings, it is essential that no sale be set aside for trifling reasons, or on account of matters which ought to have been attended to by the complaining party prior thereto."

An order confirming or refusing to confirm a judicial sale is a final and conclusive judgment to the same extent as any other adjudication of a court of competent jurisdiction. *Brady v. Ford, supra. Chapman v. Guaranty State Bank,* 267 S. W. (Tex. Com. App.) 690; 16 R. C. L. 85, § 62. After confirmation of a judicial sale, the rights of the purchasers are vested, and nothing except fraud or mistake will avoid the sale.

The rights of the bidders before and after sale are definitely stated in *Eakin v. Eakin,* 83 W. Va. 512, 98 S. E. 608, as follows:

"There is a wide difference between the court's power of control over a sale before and after confirmation. . . . A bid, though accepted by the commissioner conducting the sale, does not become a contract until reported to and confirmed by the court. Up to that time it is merely an offer to buy, but as an offer it becomes binding upon the bidder when accepted and confirmed by the court, and may be enforced against him. *Stout v. Philippi M. & M. Co.,* 41 W. Va. 339; *Lowman v. Funkhouser,* 78 W. Va. 742; *Richardson v. Jones,* 106 Va. 540. Until then the right of the purchaser is inchoate; the sale is an incomplete bargain, merely an offer which the court may or may not accept as circumstances and conditions may require. That is the stage at which the court may open anew the bidding upon an advanced offer, substantial and made in good faith. But even at this stage it is always discretionary with a court whether it will confirm a sale, though made and complied with in all respects as required by its decree, or set it aside and direct a resale. Whether a court will confirm must depend in great measure on the circumstances in each case, abuse of the discretion when effecting inequities being subject to review by the appellate court. *Lowman v. Funkhouser, supra;* 8 Enc. Dig. Va. & W. Va. Rep. 722, 728.

"But after it has been approved and confirmed by the court, thus completing the contract, it can be set aside only for good cause. It is then not a matter of discre-

tion with the court, but some special ground must be laid, such as fraud, collusion, accident, mistake, misconduct upon the part of the purchaser or some other person connected with the sale, or such other cause as would warrant relief in equity had the sale been by the parties interested instead of by the court. *Berlin v. Melhorn,* 75 Va. 639; *Langyher v. Patterson,* 77 Va. 470; *Todd v. Gallego Mfg. Co.,* 84 Va. 586; *Insurance Co. v. Cottrell,* 85 Va. 857; *Allison v. Allison,* 88 Va. 328; *Syndicate v. Johnson,* 100 Va. 774; *Morrison v. Burnette,* 154 Fed. 617; 16 R. C. L. 100. Public policy and fair dealing alike demand protection to purchasers at judicial sales, when they have complied with the terms prescribed by the decree and the sale has been confirmed.

"The importance which attaches to the confirmation of a judicial sale is shown by the rights and duties which are the purchaser's from that date. After confirmation it is an executed contract, and if not tainted by fraud or otherwise vitiated by other wrongful acts or conduct participated in by the bidder, such confirmation relates to, and vests title in him from, the date of the sale."

See, also, *Frierson v. New York Life Ins. Co.,* 174 La. 1037, 142 So. 256; *Johnson v. Baker,* 246 Ky. 604, 55 S. W. (2d) 404; *Connor v. McCoy,* 83 S. C. 165, 65 S. E. 257; *Harduval v. Merchants' & Mechanics' Trust & Sav. Bank,* 204 Ala. 187, 86 So. 52.

The rule just stated is a just one, in the absence of substantial mistake, fraud, or gross irregularity, for the reason that the successful bidder may be compelled to comply strictly with the terms and obligations of his bid.

"By the acceptance of his bid, and the subsequent confirmation of the sale by the court, the bidder becomes the purchaser in the full sense of the term, and the substantial owner of the property sold, with right of possession, though this right may not be asserted against the former owner until the due execution of a deed. As purchaser, he becomes absolutely liable for

the purchase price according to the terms of the contract of sale, and may be compelled by the process of the court to comply therewith. He is entitled to any increase in the market value of the property arising after confirmation, and has to bear any loss that may subsequently occur to it, or any burden or incumbrance subsequently placed thereon by law, even though no purchase money has been paid or deed executed and the vendor remains in possession. Furthermore, unless there was mala fides on the part of the purchaser, the fact that the terms of sale had not been complied with when the report was confirmed does not affect the case." 16 R. C. L. 116, § 83.

See, also, *Hayes v. Betts,* 227 Ala. 630, 151 So. 692, 95 A. L. R. 1484; *Tennessee v. Quintard,* 80 Fed. 829.

A careful examination of the record convinces us that appellant tendered the best bid before the entry of the order confirming the sale, dated August 5, 1938, and, since the record is barren of any evidence which would afford a legal ground for the vacation of the decree confirming the sale to appellant, we are compelled to hold the order of vacation void.

The judgment is reversed, and the trial court is directed to reinstate appellant's bid and to confirm the sale to him.

BLAKE, C. J., BEALS, MILLARD, and GERAGHTY, JJ., concur.