[No. 28357. Department One. August 14, 1941.]

H. RAMSAY FARLEY, *Appellant*, v. HAROLD I. DAVIS *et al.*, *Respondents.*[1]

[1]Reported in 116 P. (2d) 263.

64

*Ralph Woods,* for appellant.

*Metzger, Blair & Gardner,* for respondents.

STEINERT, J.—Plaintiff brought suit to have certain real property subjected to a constructive trust and to obtain an accounting of the rents and profits derived therefrom, or, in the alternative, to recover judgment against defendants for the value of the property, less the amount of any existing encumbrances and of any legal charges previously paid by defendants. Demurrer to the complaint was sustained, and, plaintiff having elected to stand upon his pleading, judgment dismissing the action was entered. Plaintiff appealed.

The allegations of the complaint are substantially as follows: Mary B. Farley, a resident of Tacoma, died testate on November 24, 1937. She left surviving, as her heirs, devisees, and legatees, three sons and four grandchildren. Appellant, H. Ramsay Farley, is one of the sons.

In her will, which was executed in 1931, the testatrix bequeathed certain articles of adornment and wearing apparel to various named legatees, created a trust in a specified amount in favor of her four grandchildren, and bequeathed and devised the remainder of her estate

to her three sons, with the proviso that the real estate belonging to her should not be sold, mortgaged, or alienated by her sons, or by any of them, within ten years from and after her death. The will further directed that her real property be retained intact for a like period of ten years, before distribution should be made, and that during such period there should be no sale of any part of such realty unless necessary in order to comply with the terms of the will. Respondent National Bank of Washington, a corporation, was nominated sole executor of the will, with power to administer the estate without intervention of any court.

On November 26, 1937, the will was admitted to probate by order of the superior court of Pierce county, the nomination of respondent bank as executor was confirmed, and letters testamentary were issued.

The inventory and appraisement, filed June 24, 1938, showed the following property of the estate, together with its appraised value:

| | |
|---|---:|
| An improved tract of ground, referred to herein as the "A" street property, | $10,000.00, |
| Two lots located in Lincoln Avenue Factory Sites Add., | 40.00, |
| Acreage in Kitsap county, | 100.00, |
| Checking account in respondent bank, | 93.73, |
| Savings account, | 1.02, |
| Balance of an account with Alpha Corporation, | 393.43, |
| Household goods, | 100.00, |
| Total, | $10,728.18. |

The total appraised value of the personal property listed in the inventory above amounted to $588.18, and that of the real property amounted to $10,140. The Kitsap county acreage, appraised at one hundred dollars, was subsequently sold by the executor for one hundred thirty-five dollars.

The controversy in this case relates chiefly to the

"A" street property, which was encumbered by a mortgage in the sum of six thousand dollars and was subject to a contract with Pierce county for the payment of delinquent taxes.

Three claims, including those of the undertaker and of a cemetery association, all totalling $437.98, were filed against the estate.

On September 15, 1939, which was approximately one year and ten months after the death of the testatrix, the executor petitioned the probate court for an order to sell the "A" street property at private sale. The petition set forth the number and amount of claims against the estate, alleged the necessity of paying the taxes on the property and the expenses of administration, and advised the court that the executor had an offer of thirteen thousand dollars for the "A" street property, less a commission of five per cent to the real estate agents representing the estate. Pursuant to that petition, the court on the same day entered an order directing that the property be sold at private sale.

The "A" street property was thereafter reappraised at a value of thirteen thousand five hundred dollars, and notice of the proposed sale thereof was regularly published as required by law. Two bids for the purchase of the property were received, one for thirteen thousand five hundred dollars by Healy Bros. Inc., and the other for thirteen thousand six hundred dollars by respondent Harold I. Davis. The bid made by Davis was accepted, and, on October 11, 1939, the executor reported to the court the facts concerning the bids and the sale.

On October 20, 1939, Healy Bros. Inc. made a new bid amounting to thirteen thousand eight hundred dollars for the property. That bid, however, was not accepted, because it was not in an amount "equal to ten per cent higher than the bid upon which sale [to Davis] was

made by the executor," as required by Rem. Rev. Stat., § 1502 [P. C. § 9984], nor was the bid accompanied by a deposit of twenty per cent of the amount thereof, as is also required by that statute.

Upon a hearing on the return of sale, the court, on October 23, 1939, confirmed the sale made to Davis. The executor thereupon paid to Comfort & Davis, a real estate firm of which respondent Davis was a partnership member, a commission of five per cent, or six hundred eighty dollars, on the consummated sale, as agreed.

On November 20, 1939, the executor made its final report showing that, after the payment of the mortgage and the delinquent taxes on the property, the commission and other expenses of sale, and the claims against the estate, there was left in the estate the sum of $3,325 in cash, the Alpha Corporation account, and the Lincoln Avenue Factory Sites property which had been appraised at forty dollars. Upon a hearing on the report, the court, on December 20, 1939, entered its final decree of distribution, and therein allowed the sum of five hundred dollars to the executor and a like sum to its attorney for their respective fees.

Appellant, individually and as trustee for the other heirs, refused to accept the money and property distributed to them under the final decree, and thereafter took from the other heirs an assignment of all their interest in the estate.

In addition to the foregoing recital, the complaint contains the following allegations, in substance, upon which appellant bases his alleged right of action: (1) That, if the executor were not willing to administer the estate according to the terms of the will, it should have refused to be appointed, or else should have resigned; (2) that the "A" street property, here in question, was actually worth twenty-five thousand dollars,

but was sold for one-half its value; (3) that it was unnecessary to sell the property or to incur the expenses of sale thereof for the purpose of paying the outstanding mortgage or the delinquent taxes, because the mortgagee of the property was not demanding payment, and because the income from the property was sufficient to pay the taxes according to the contract with the county; and that the property "seems to have been sold for the principal purpose of paying executor's fees and attorney's fees"; (4) that the property was sold without the actual knowledge of any of the persons interested in the estate; that the executor knew the addresses of appellant and his brothers, but never advised any of them that the property would be sold; that appellant was often in the bank of respondent executor, but was never given notice that such sale was contemplated; that, in fact, respondent's trust officer and its attorney both told appellant at different times that the property would not be sold, mortgaged, or alienated until ten years had elapsed after the date of the death of the testatrix; that appellant relied on such representations, and for that reason did not watch the proceedings in court; and that the executor, because of its fiduciary relationship to the heirs, was obligated to inform them as to the state of the business and interests entrusted to it; (5) that the executor unnecessarily incurred expenses of sale of the "A" street property and unlawfully allowed the real estate firm of Comfort & Davis, of which respondent Davis was a partnership member, a commission upon such sale; and (6) that the firm of Comfort & Davis had for several years been the trusted agent of the testatrix for the collection of rentals from the "A" street property, and had continued to act as such agent for the executor after the death of the testatrix; that Comfort & Davis had special knowledge concerning the value of the

property; that the members of that firm, likewise, stood in a fiduciary relationship to the heirs, which relationship required them to act with fidelity and good faith toward those interested in the estate; and that, because of such relationship, respondents Davis should, in right, justice, and good conscience, be decreed to hold the legal title to the "A" street property in trust for appellant, subject only to taxes, the amount of the mortgage, and the necessary expenses of administration.

The enumerated allegations which we have just previously set forth have not been recited in the exact order in which they appear in the complaint, but have been rearranged and grouped in numerical divisions for the purpose of more conveniently discussing the points raised in appellant's brief.

The prayer of appellant's complaint was that respondents Davis be declared to be holders of the "A" street property in trust for appellant, and that they be required to account for the rents and profits therefrom; and, further, if they be found to have transferred or encumbered the property, that judgment be awarded appellant against all the respondents in the sum of twenty-five thousand dollars, less the amount paid for taxes and the outstanding mortgage.

The basic question underlying the respective contentions in this case is whether or not appellant's present action constituted a collateral attack upon the decree of distribution rendered in the prior probate proceeding. It appears to be mutually conceded that the ground upon which the demurrer to the complaint herein was sustained was that the action did constitute such collateral attack.

It is settled law in this state that orders and decrees of distribution made by superior courts in probate proceedings upon due notice as provided by stat-

ute are final adjudications having the effect of judgments *in rem,* and are conclusive and binding upon all persons having any interest in the estate and upon all the world as well. *In re Ostlund's Estate,* 57 Wash. 359, 106 Pac. 116, 135 Am. St. 990; *Alaska Banking & Safe Deposit Co. v. Noyes,* 64 Wash. 672, 117 Pac. 492; *McDowell v. Beckham,* 72 Wash. 224, 130 Pac. 350; *Krohn v. Hirsch,* 81 Wash. 222, 142 Pac. 647; *Bayer v. Bayer,* 83 Wash. 430, 145 Pac. 433; *Meeker v. Waddle,* 83 Wash. 628, 145 Pac. 967; *Davis v. Seavey,* 95 Wash. 57, 163 Pac. 35, Ann. Cas. 1918D, 314; *Doble v. State,* 95 Wash. 62, 163 Pac. 37; *In re Nilson's Estate,* 109 Wash. 127, 186 Pac. 268; *Bremerton Creamery & Produce Co. v. Elliott,* 184 Wash. 80, 50 P. (2d) 48; *O'Leary v. Bennett,* 190 Wash. 115, 66 P. (2d) 875; *In re Daub's Estate,* 190 Wash. 420, 68 P. (2d) 610; *In re Nielsen's Estate,* 198 Wash. 124, 87 P. (2d) 298; *Christianson v. King County,* 239 U. S. 356, 60 L. Ed. 327, 36 S. Ct. 114.

Such decrees cannot be attacked or annulled in any collateral proceeding, except for fraud. *Meeker v. Waddle, supra; In re Nilson's Estate, supra; In re Nielsen's Estate, supra.*

Moreover, when fraud is alleged as the basis for collateral attack upon a judgment or decree, the fraud alleged and sought to be established must be extrinsic or collateral to the issues tried in the proceedings which are attacked, or, as sometimes stated, there must have been fraud in procuring the original judgment or decree. *Meeker v. Waddle, supra; Robertson v. Freebury,* 87 Wash. 558, 152 Pac. 5, L. R. A. 1916B, 883; *Davis v. Seavey, supra; Doble v. State, supra; Smith v. Smith,* 148 Wash. 457, 269 Pac. 821; *Toledo Scale Co. v. Computing Scale Co.* (C. C. A., 7th), 281 Fed. 488, 494; *Continental Nat. Bank v. Holland Banking Co.* (C. C. A., 8th), 66.F. (2d) 823, 830; *Atchison, T. & S. F. R. Co. v.*

*United States* (C. C. A., 8th) 106 F. (2d) 899, 903; *Caldwell v. Taylor,* 218 Cal. 471, 23 P. (2d) 758, 88 A. L. R. 1194; *Crouch v. McGaw,* 134 Tex. 633, 138 S. W. (2d) 94; *Price v. Smith,* 109 S. W. (2d) (Tex. Civ. App.) 1144; *Traders & General Ins. Co. v. Rhodabarger,* 109 S. W. (Tex. Civ. App.) 1119, 1123. Accord, *Platt v. Magagnini,* 110 Wash. 39, 187 Pac. 716.

██ "Extrinsic or collateral fraud," justifying equitable relief against a judgment or decree, means some intentional act or conduct by which the prevailing party has prevented the unsuccessful party from having a fair submission of the controversy. *Robertson v. Freebury, supra; United States v. Throckmorton,* 98 U. S. 61, 25 L. Ed. 93; *Continental Nat. Bank v. Holland Banking Co., supra; Dockery v. Central Arizona Light & Power Co.,* 45 Ariz. 434, 45 P. (2d) 656, 663; *Thompson v. Thompson,* 38 Cal. App. (2d) 377, 101 P. (2d) 160; *Godfrey v. Godfrey,* 30 Cal. App. (2d) 370, 86 P. (2d) 357, 362; *Zaremba v. Woods,* 17 Cal. App. (2d) 309, 61 P. (2d) 976, 981; *Ringwalt v. Bank of America Nat. Trust & Sav. Ass'n,* 3 Cal. (2d) 680, 45 P. (2d) 967; *Jeffords v. Young,* 98 Cal. App. 400, 277 Pac. 163, 165; *Flood v. Templeton,* 152 Cal. 148, 92 Pac. 78, 13 L. R. A. (N. S.) 579; *Young v. Young,* 188 Ga. 29, 2 S. E. (2d) 622; *Eaton v. Koontz,* 138 Kan. 267, 25 P. (2d) 351; *Stillie v. Stillie,* 121 Kan. 591, 249 Pac. 672, 674; *Garrett Biblical Institute v. Minard,* 82 Kan. 338, 108 Pac. 80; *Bullard v. Zimmerman,* 88 Mont. 271, 292 Pac. 730; *Beatty v. Beatty,* 114 Okla. 5, 242 Pac. 766; *Price v. Smith,* 109 S. W. (2d) (Tex. Civ. App.) 1144; *State v. Wright,* 56 S. W. (2d) (Tex. Civ. App.) 950, 952.

██ With the foregoing rules as guides, we shall consider the allegations of the complaint and the contentions of appellant. First, it is urged by appellant that the sale violated the terms of the will, in that the will directed that there should be no sale of the real

property nor any distribution of the estate prior to the expiration of ten years from and after the death of the testatrix. Reliance is placed on Rem. Rev. Stat., § 1415 [P. C. § 10042], which provides:

"All courts and others concerned in the execution of last wills shall have due regard to the direction of the will, and the true intent and meaning of the testator, in all matters brought before them."

Effective as that section may be, and however clear the intention of the testatrix may have been, a testamentary provision such as that which we are now considering must yield to the requirements of Rem. Rev. Stat. (Sup.), § 1494 [P. C. § 9976] (Laws of 1937, chapter 28, p. 71, § 3), which provides for the sale of real property, under order of court, when necessary for the purpose of raising money to pay debts and obligations of the estate and the expenses of administration. In this case, the court, upon petition of the executor, determined that there was a necessity for the sale of the property, and accordingly entered an order directing sale thereof. The sale was subsequently confirmed.

The issues involved in that petition were intrinsic in the probate proceeding. Mere deviation from the particular provision in the will, arising out of necessity in the lawful administration of the estate, cannot be said to be fraudulent. There is no allegation in the complaint that either the order of sale, or the order of confirmation, though deviating from the conditions sought to be imposed by the testatrix, was induced through any fraud. The orders therefore were conclusive of their regularity (Rem. Rev. Stat., § 1504 [P. C. § 9986]), and cannot now be set aside upon the alleged ground that they conflicted with the intention of the testatrix.

It is next contended that the "A" street property was actually worth twenty-five thousand dollars,

but was sold for one-half its value. The property was appraised twice during the course of administration, and then was put up for sale upon competitive bids. The property was subsequently sold for an amount in excess of its appraised value. In confirming the sale, the court was required to consider the value of the property, and, in the absence of any indication to the contrary, it must be presumed that it did so. All questions affecting the sale were, likewise, matters intrinsic in the probate proceeding, and are concluded by the order of confirmation and the subsequent decree of distribution, unless there be an affirmative showing of fraud.

On this phase of the case, the complaint does not sufficiently present any issue of fraud. There is no allegation of fraud in connection with either of the appraisements, or in connection with the sale itself. There is no allegation of conspiracy between the executor and the purchaser to dispose of the property for less than its fair value. There is no allegation that the executor knew that the property was worth more than its appraised value. There is no allegation that the court was not conversant with the true value of the property at the time of the confirmation of the sale. There is no allegation that the property could have been sold for the amount alleged by appellant or for any other amount in excess of what it actually brought. Finally, there is no allegation that appellant was not fully informed of the sale price prior to the time that the sale was confirmed, or prior to the entry of the decree of distribution.

■ The third contention is that the sale and the expenses thereof were unnecessary because the mortgagee of the property was not demanding payment and because satisfactory arrangements had been made for the ultimate payment of the delinquent taxes. This

contention is fully disposed of by what we have already said with respect to appellant's previous contentions. All questions affecting the sale, including the question of the necessity therefor, were matters inherent in the probate proceeding, and cannot be set aside except for fraud.

An analysis of the complaint discloses that the debts against the estate, including the claims, the past due mortgage, and the delinquent taxes, amounted to about ninety-five hundred dollars. In addition, there were the expenses incident to the sale and the expenses of administration. The personal property of the estate, as shown by the inventory, amounted to only $588.18. The rental on the property was only one hundred dollars a month. One piece of real estate had been sold for one hundred thirty-five dollars.

Rem. Rev. Stat., § 1517 [P. C. § 9885], requires an executor to settle the estate in his hands as rapidly as possible without sacrifice to the estate, to collect all debts due the deceased, and to pay all debts of the estate in the order specified in Rem. Rev. Stat., § 1541 [P. C. § 9803].

Appellant and the other heirs evidently were unable themselves to pay the debts and thus save the "A" street property from sale, and the complaint makes no allegation to the contrary. The whole situation was presented to the probate court, and under the circumstances it cannot be said, with reason, that it was not necessary to sell the property. Certainly no fraud is deducible from the fact of sale made under order of court.

■ In this connection, appellant further contends that the executor had no right to employ a real estate agent to collect the rentals on the property. Rem. Rev. Stat., § 1526 [P. C. § 9788], provides that an executor shall be allowed all necessary expenses in the

care, management, and settlement of the estate. This court has recognized the propriety of such employment. *In re Hart's Estate,* 156 Wash. 255, 286 Pac. 650. Accord, *Jones v. Peabody,* 182 Wash. 148, 45 P. (2d) 915, 100 A. L. R. 64, and *In re Robinson,* 9 Wn. (2d) 525, 115 P. (2d) 734. See, also, 21 Am. Jur. 505, Executors and Administrators, § 236.

In the absence of any contrary allegation in appellant's complaint, it must be presumed, in support of the decree in the probate proceeding, that the executor in its final report made full disclosure of such expenditures, and that the court, in fixing the executor's fee, took into consideration the fact that a part of its duties were performed by a compensated agent. The allowance and payment of such compensation were matters intrinsic in the hearing on the final report and, there being no allegation of fraud in that respect, they cannot be collaterally attacked.

Appellant's next contention is that the property was sold without the actual knowledge of appellant or of any of the heirs. There is no statute in this state which requires that personal notice of sales of real property in probate proceedings be given to persons who are interested in the estate. The administration of an estate is a proceeding *in rem,* and when real property belonging to the estate is ordered to be sold, the statute requires only that notice of sale be given by posting and publication, whether the sale be by public auction (Rem. Rev. Stat., § 1497 [P. C. § 9979]), or at private sale (Rem. Rev. Stat., § 1499 [P. C. § 9981]). *Ryan v. Fergusson,* 3 Wash. 356, 28 Pac. 910. Likewise, notice by posting and publication, only, is required with respect to the hearing of the final report and petition for distribution. Rem. Rev. Stat., § 1532 [P. C. § 9794]; *In re Ostlund's Estate,* 57

Wash. 359, 106 Pac. 1116, 135 Am. St. 990; *In re Doan's Estate,* 64 Wash. 303, 116 Pac. 847.

Rem. Rev. Stat., § 1434 [P. C. § 9950], provides that persons interested in the estate *may* make written request for special notice of the filing of petitions for sales of property, and that, upon such request, notice of such proceedings *shall* be addressed to them. In the absence of such request, however, no personal, or actual, notice to such persons is required. Furthermore, Rem. Rev. Stat. (Sup.), § 1494, provides that unless the court shall by order expressly so direct, no notice of hearing of a petition for the sale of real estate need be given except as provided in Rem Rev. Stat., § 1434. In this case, no request for special notice was ever made by appellant or by any other interested party. Hence no personal notice to them was necessary.

In this connection, appellant contends further, however, that on several occasions he was told by the executor's trust officer and by its attorney that the property would not be sold within the ten-year period specified in the will, and that, relying upon such representations, he failed to watch the probate proceedings. There is no allegation in the complaint that such statements or representations were made with the intent to deceive appellant, to prevent him from watching the course of the proceedings, or to keep him away from any sale of the property. There is no allegation that appellant did not learn of the sale prior to the time of the hearing on the final report and petition for distribution. In fact, there is no specific charge of fraud at all against the executor in making the sale. On the contrary, the facts pleaded in the complaint are entirely consistent with moral innocence and good faith on the part of the executor. Appellant almost concedes this, for in his brief he says, in reference

to the sale and the final decree: "It may have been done innocently, but the effect is the same as if done fraudulently." The representations were, at best, but declarations of intention.

Such statements or declarations of intention, however, cannot be made the basis of a fraud action except by alleging and proving that they were intended to be relied upon as binding promises and that the makers had, at the time of making them, no intention of performing them. Neither of these two requirements is satisfied here.

Assuming, then, that the alleged representations constituted matters extrinsic to the probate proceeding, they are nevertheless insufficient to constitute a charge of fraud.

The next contention is that the executor unnecessarily incurred expense in the sale of the "A" street property, and unlawfully allowed Comfort & Davis a commission on the sale of that property. The expenses of the sale, other than the commission, included ninety-three dollars for title insurance, and fourteen dollars for revenue stamps required for the deed to the purchaser. Those items were, of course, proper if the sale was justified. We have heretofore disposed of the question of the necessity, propriety, and regularity of the sale.

As to the commission, it is contended that, since the partnership firm of Comfort & Davis was employed as agent for the collection of rentals, that firm had no right to receive compensation for a sale of the property to respondents Davis. The fact that the firm was employed to collect rentals did not disqualify it from acting as agent in the sale of the property. The two kinds of services were entirely different and were not incompatible; nor was it at all inconsistent or im-

proper that the agent be compensated for both kinds of services.

It may, at first blush, seem to have been improper, or at least questionable, to allow a commission to Davis, who was himself the purchaser of the property, and who at the same time was a member of the firm of agents that brought about the sale. However, there was nothing clandestine or suggestive of fraud or over-reaching in the transaction. On the contrary, there was a full disclosure of the facts to the court. As appears by the complaint, the executor first made known to the court that it had an offer of thirteen thousand dollars, which was more than the original appraised value of the property, "less commission of five (5%) per cent to the real estate agents representing the estate," and the court thereupon ordered the property to be sold. Later, the property was reappraised at thirteen thousand five hundred dollars, and thereafter the executor reported to the court that it had received two bids for the property, and named the bidders, one of whom was respondent Davis. His bid being the higher one, and, as already stated, the only lawful one, it was accepted. In due time, the sale to Davis was confirmed by the court. It may be noted, further, that the price paid by Davis was higher than the reappraised value of the property. Under these circumstances, there can be no inference of fraud from the allegations of fact as set forth in the complaint, and, the allowance and payment of the commission being matters intrinsic in the hearing of the final report, they cannot now be collaterally attacked.

Appellant's final contention is that Davis, and the real estate firm of which he was a member, stood in the relationship of a trustee or fiduciary to the heirs of the estate, that they had special knowledge of the value of the property, and that therefore it should be

held that Davis took title to the property in trust for appellant. In support of this contention, appellant cites a number of authorities to the effect that one standing in the position of trustee or fiduciary owes the beneficiary of the trust the utmost fidelity and loyalty. That principle of equity we readily accept, but we do not concede its application here. Davis was not a trustee of the appellant and the other heirs; he was but a real estate agent whose duties, at most, were to collect the rentals and to secure a purchaser of the property.

There is no claim here that Davis ever misappropriated any funds or that he in any way connived with any one at selling the property for less than its fair value. On the contrary, his original offer to purchase the property for thirteen thousand dollars was disclosed to the court; and, thereafter, at a private sale, notice of which was given according to law, he not only was the highest bidder, but also paid more than the amount at which the property had been reappraised. The sale was subsequently confirmed by order of the court, upon full disclosure of the terms and circumstances under which it was made.

Rem. Rev. Stat., § 1504, provides that confirmation of such sales shall be absolutely conclusive as to the regularity of all proceedings leading up to and including such sale, and that no instrument of conveyance of real estate made after confirmation of sale by the court shall be open to attack upon any grounds whatever except for fraud. From the facts as alleged in the complaint, there can be no reasonable inference of fraud concerning the sale to Davis, and hence the sale is not open to attack on the ground that a constructive trust was thereby created.

The judgment is affirmed.

ROBINSON, C. J., MAIN, BLAKE, and DRIVER, JJ., concur.