Glenn C. SHAW, Plaintiff and Appellant,

v.

Ashley L. ROBISON and KOVO, Inc.,
a Utah corporation, Defendants
and Appellants,

v.

FIRST MEDIA CORPORATION, a Delaware
Corporation, Intervenor and Respondent.

No. 13823.

Supreme Court of Utah.

June 26, 1975.

Reed L. Martineau and Michael R. Carlston, of Worsley, Snow & Christensen, Dean E. Conder, of Nielsen, Conder, Hansen & Henriod, Salt Lake City, for plaintiff-appellant.

Gifford W. Price and J. Thomas Greene, of Callister, Greene & Nebeker, Gordon L. Roberts, of Parsons, Behle & Latimer, Salt Lake City, for defendants-appellants.

ELLETT, Justice:

Shaw and Robison each owned fifty per cent of KOVO, Inc., a corporation which owns and operates a radio station. Differences arose between them with regard to the management of the corporation, including disputes over the status of the accounts of each in relationship to each other and to the corporation. The differences could not be resolved, and Mr. Shaw filed suit, ultimately asking for the appointment of a receiver. A counterclaim was filed by Mr. Robison. After a hearing, the court appointed a receiver. The two parties later settled their difficulties and jointly moved the court to terminate the receivership. The court denied the joint motion.

The court had repeatedly urged the two to settle their own problems. The question posed here is whether the settlement was too late in point of time in that a receiver's sale of the assets of the corporation had already been consummated.

The facts of the case are not in dispute.

On April 24, 1973, at a hearing as to whether a receiver should be appointed, counsel for the parties told the court that they had arrived at a proposed interim solution which was read into the record, and the court then ordered that the matter be continued without date to be called up by either party. Thereafter it appeared that the settlement failed to materialize, and an order to show cause was issued on August 28, 1973, and heard August 31. A receiver was duly appointed by order dated September 17, 1973. The order contained the following statement:

It appearing that the directors of KOVO, Inc. are deadlocked in the management of the corporate affairs and the shareholders are unable to break the deadlock and that irreparable injury to the corporation is being suffered or is being threatened by reason of said deadlock and it further appearing that because of the deadlock which exists it is necessary that the assets and business of the corporation be sold and liquidated and that a Receiver should be appointed to carry on the business of the corporation and preserve its assets during the sale and liquidation of its assets and business, . . .

No objection was made by either party to the order as made.

On the 16th day of November, 1973, the receiver filed his first report wherein he outlined among other things his efforts toward keeping the radio station in operation and his attempts toward securing a purchaser for the station.

On January 15, 1974, an offer to purchase all of the assets of the corporation, both tangible and intangible, was made by First Media Corporation (hereinafter called F. M.C.), whereby it would pay the sum of $540,000 less the aggregate liabilities of the corporation. The offer was conditioned on approval by the court and a transfer of the license by the Federal Communications Commission. In addition, F.M.C. offered to pay each of the parties to the suit the sum of $6250 per year for six years if they would agree not to compete with F.M.C. for that period of time.

On the 30th day of January, 1974, the receiver moved the court to hear evidence as to which of several offers to purchase should be accepted. The motion was set for hearing February 6, 1974, and all parties attended and participated in the proceedings therein.

On February 21, 1974, the receiver filed a report in the nature of a letter to the judge in which he analyzed the three offers he had received: One from F.M.C., one from the plaintiff, and one from the defendant. All three bids were substantially alike. The ability of the prospective purchasers was described, and the possible tax consequence of the two parties was considered if either of their offers was to be accepted. In his recommendation to the court the receiver stated:

> After a careful consideration of all of the factors involved, and particularly in view of the fact that all of the offers are virtually identical in terms of the basic market value ascribed to the assets, I am constrained to recommend that the FMC Offer be approved.

The trial judge made the following order:

> The court having considered evidence presented in support of proposed offers of purchase of KOVO, Inc., and having considered the report of the receiver herein concerning such offers, and having considered the course taken by this proceeding since its inception, it concludes that the best interests of all parties herein would be served in the most even handed and expeditious manner by accepting the offer of F.M.C., Inc.
>
> It is therefore ordered that the report and recommendation of the receiver be accepted by the court and filed in this proceeding, and that the receiver proceed to accept the offer of F.M.C., Inc., and proceed with all reasonable dispatch to conclude sale to that offeror.

Mr. Robison objected to the order authorizing the receiver to proceed to negotiate a sale with F.M.C., but the objection was overruled.

In the meantime the receiver and the agents of F.M.C. worked on a final contract particularly as to the debts of the corporation and how they would be handled and also as to how the escrow money would be handled in case the Federal Communications Commission refused to transfer the license, etc. The final agreement provided that the attorneys would have to make certain certifications regarding title, etc. It was the same agreement which had been approved by the court on February 22, 1974, except for the mechanics of how it would be implemented.

On May 11, 1974, the receiver again moved the court to permit him to execute the agreement with F.M.C., a copy of which was attached to the motion. The matter was set for hearing on May 24, 1974. No one appeared at the hearing on that day, and so the court struck the same from the calendar to be renoticed at a later date by counsel. On May 29, 1974, counsel for the parties were notified that the matter would be heard June 7, 1974.

On June 5, 1974, two days before the motion for final approval of the contract was to be heard, the plaintiff and defendant filed a joint motion to terminate the receivership on the ground and for the reason that all issues between the parties to the suit had been settled subject only to the approval of the court.

On June 7, 1974, F.M.C. moved to be allowed to intervene, claiming vested rights in the contract entered into with the receiver. On June 20, 1974, both parties stipulated that the motion to intervene should be granted, and eight days later the judge made an order whereby F.M.C. was permitted to intervene.

The motion to authorize the execution of the integrated contract was finally heard June 28, 1974, with the parties, the receiver, and the intervenor all represented by counsel. Witnesses testified, and exhibits were offered and received in evidence. Counsel for plaintiff moved for a continuance, and the court continued the matter until July 3, 1974. At that time additional evidence was presented. The court took the matter under advisement. On July 29, 1974, the court granted the receiver's motion to execute the agreement with F.M.C., and this appeal followed.

As a background for the order made, it should be noted that in February, 1974, the court approved the recommendation of the receiver and directed him to proceed to accept the offer made by F.M.C. Pursuant thereto the receiver entered into a contract with that company.

■ Although the receiver again moved the court to approve the contract, he did not need to do so in order to make a binding contract. The law is aptly stated in 75 C.J.S. Receivers § 243a as follows:

It is the general rule that a sale by a receiver of property in his charge is not complete and binding, and that the purchaser acquires no title thereunder, until the sale is confirmed by the court, *unless the sale is made in conformity with authority to sell on specified terms expressly given beforehand.* [Emphasis added.]

Both F.M.C. and the receiver assumed that a final approval was necessary. However, the court had expressly directed the receiver to enter into the contract with F.M.C.

■ A receivership is an equitable matter and is entirely within the control of the court. The fact that the parties requested a termination of the matter in the midst of the proceedings does not compel the court to "about face" and cease all matters instanter. See 66 Am.Jur.2d, Receivers, § 193, where it is said:

In determining whether to continue a receivership or discharge the receiver the court will consider the rights and interests of all parties concerned, and will not grant an application for discharge merely because it is made by the party at whose instance the appointment was made.

■ Ordinarily when a receiver is appointed because of dissensions in the management of a corporation which prevent the conduct of the business without serious losses, the receivership should not be continued after the dissension ceases.[1] However, when the dissension continues until after a contract of sale of the property has been made, the parties to the suit ought not be permitted to defeat the rights of the purchaser by jointly asserting that they have settled all differences. This is especially true where the receiver was appointed for the purpose of selling the business, and this without objection of the parties.

■ First Media Corporation was permitted by stipulation of the plaintiff and defendant to intervene and thus become a party to the proceedings. Evidence was given to the court of the expenses incurred in implementing the contract pursuant to the offer made under the direction of the court to the receiver. In doing equity to all the interested parties, the court had a discretion,[2] and its refusal to discharge the receiver or to prevent the contract entered into from becoming effective was not an abuse of discretion.

The judgment is therefore affirmed.[3] Costs are awarded to the respondent.

HENRIOD, C. J., and CROCKETT, TUCKETT and MAUGHAN, JJ., concur.

1. 66 Am.Jur.2d, Receivers, § 194.

2. 75 C.J.S. Receivers § 236.

3. The trial court permitted 188 lines of transcript to be consumed in argument as to whether a memorandum of a meeting together with certain newspaper articles should be received in evidence. His Honor finally stated: "I will accept it on that ground. I can assure you that I won't pay much attention to it. The appellate Court might. I don't know what a Utah court will do." From the amount of time His Honor spent in deciding whether or not the articles were objectionable under the hearsay rule, one wonders if the doubt he expressed referred to his own court.