[No. 48610-7. En Banc. October 20, 1983.]

KATHRYN E. WALTON, *Plaintiff,* v. J. A. SEVERSON, ET AL, *Respondents,* DUWAMISH HEIGHTS JOINT VENTURE, *Petitioner.*

*Treece, Richdale, Malone & Corning, Inc., P.S.,* by *Thomas W. Malone,* for petitioner.

*Davis, Wright, Todd, Riese & Jones,* by *Hall Baetz,* and *Phillip Offenbacker,* for respondents.

PEARSON, J.—Duwamish Heights Joint Venture (DHJV) appeals the Court of Appeals affirmance of the trial court's order setting aside an earnest money agreement between DHJV and a receiver.

The principal issue raised on appeal is whether the trial court had authority to enter the order setting aside the

earnest money agreement. A receivership court has discretion to set aside a sale by a receiver at any time until the sale is confirmed by the court. Accordingly, the trial court in the present case would have no discretion to set aside the transaction after it had confirmed the sale. The specific issue before us, therefore, is whether the trial court had confirmed the sale at any time before it purported to set aside the earnest money agreement. We agree with the Court of Appeals and hold that approval by the trial court of an earnest money agreement does not constitute final confirmation of the sale of realty, and that therefore the trial court did not abuse its discretion in setting aside the agreement.

This case arises out of the dissolution of a limited partnership following the death of the sole general partner. The limited partnership, Overlook Heights Associates (OHA), was formed in 1961 for the purpose of acquiring and developing property in King County. The partnership comprised a general partner, Clayton L. Walton, and several limited partners. It acquired several parcels of property in the Overlook Heights area, and used the land as a sand quarry.

In May 1974, Clayton L. Walton died. Under the terms of the partnership agreement, this dissolved the partnership, and Walton's widow (the executrix of his estate) brought an action seeking an order of dissolution and appointment of a receiver to close the affairs of the partnership.

A receiver, Mr. Floyd F. Fulle, was appointed by the court and proceeded with liquidating the partnership assets. These assets consisted principally of several parcels of real estate, one of which is the subject of the dispute before the court. In the course of dissolving the partnership, the receiver obtained an offer to purchase this parcel for $120,000. This offer was in the form of an earnest money agreement submitted by a partnership named Duwamish Heights Associates (DHA), a group of Everett doctors. The earnest money agreement was contingent upon two conditions: the purchaser's securing binding earnest

money agreements with adjoining property owners; and the issuance of permits for the removal of sand and gravel and grading of the property pursuant to a reclamation plan to be approved by the City of Seattle.

On January 27, 1978, the receivership court authorized the receiver to sign this earnest money agreement. The order granting this authority provided:

> The Receiver is also authorized to sign any further refinements of this agreement which carry out the spirit and intent of the attached Earnest Money Receipt and Agreement without further authorization of the Court. Any changes beyond the scope of the attached Earnest Money Receipt and Agreement must be brought to this court for approval.

The earnest money agreement was subsequently amended by agreement of DHA and the receiver. The amendment, which was only a modification of the description of legal boundaries, was considered by the parties to be a refinement of the original agreement and consequently court approval was not obtained.

In April 1978, DHA, having obtained most of the required earnest money agreements from adjoining property owners, waived the first condition and paid $3,500 earnest money. The parties appear to agree that this allowed DHA until September 1979 to complete the sale.

On April 13, 1979, the court entered an order which "approved, ratified, and confirmed" all acts of the receiver up to that date. In September 1979, the receiver reported to the court that he had learned that DHA had assigned its interest in the earnest money agreement to another entity.

On October 1, 1979, one of the limited partners in Overlook Heights Associates, Dr. J. S. Severson, moved the court to direct the receiver to withdraw his acceptance of the offer of DHA to purchase the parcel of receivership property. Dr. Severson argued, *inter alia,* that the assignment of the interest under the earnest money agreement was invalid, that the price specified in the offer was inadequate, and that the sale was negotiated in circumstances

suggesting a conflict of interest.

On November 30, 1979, the court declared the earnest money agreement between the receiver and DHA null and void, and ordered that the property be sold at public auction on December 18, 1979. This order was based on findings of fact and conclusions of law entered on November 30, 1979. The court found that the entity to which the interest under the earnest money agreement had been assigned was Duwamish Heights Joint Venture, a firm comprising Bruce Hanson and John Walton. Bruce Hanson was a limited partner in OHA, and also the president of Boulevard Excavating, Inc., a firm which had been found to have removed substantial material from the property without paying for it. John Walton (apparently a son of the deceased general partner in OHA) had been employed by the receiver and was active in management of the receivership from its inception until December 31, 1977. The assignment to Hanson and Walton was made without notice to the court or to other limited partners in DHA.

The trial court also found that J. S. Severson had made an offer of $200,000 to purchase the property from the receiver. It further found (in the only finding of fact challenged on appeal) that no order confirming the sale to DHA was ever entered.

The court concluded from these findings that the assignment from DHA to DHJV was null and void for three reasons: because Walton and Hanson had violated fiduciary duties they owed to the receiver and to OHA; because court approval of the assignment had not been obtained; and because the earnest money agreement was unassignable, the receiver having relied upon the particular identity of DHA.

At the public auction of the property on December 18, 1979, the minimum bid was set for $200,000. It appears from the terms of this sale that permits for the removal of material from the property had not been obtained at the time of the sale. The property was purchased at this sale by DHJV for $248,000 and the sale was confirmed by the court on the same day.

DHJV appealed to the Court of Appeals to review the receivership court's order of November 30, 1979, setting aside the assignment of the interest under the earnest money agreement. In this appeal, DHJV argued that the judicial sale had been confirmed by the receivership court, that failure to obtain the court's approval did not invalidate the assignment, that there had been no breach of fiduciary duties by Hanson and Walton, and that the trial court had no authority to set aside a sale 19 months after it had been confirmed.

The Court of Appeals held that the sale had not been confirmed and that the receivership court did not abuse its discretion in setting aside the agreement prior to final confirmation. This conclusion made it unnecessary to consider the other issues.

Before this court, DHJV raises two issues: whether the receivership court had affirmed the sale to DHJV, and whether failure to obtain court approval invalidated the assignment from DHA to DHJV. We find it necessary to consider only the first of these issues.

We begin our analysis of the issue with a consideration of the nature and extent of the receivership court's powers and duties.

The office of a receiver is governed in this state by statute. RCW 7.60. The statute defines a receiver as a person appointed by a court or judicial officer to take charge of property in certain circumstances and to manage and dispose of it as the court or judicial officer directs. RCW 7.60-.010. A receiver may be appointed in a wide variety of circumstances (enumerated in RCW 7.60.020), one of which is "an action between partners, or other persons jointly interested in any property or fund". RCW 7.60.020(2). The receiver has "power, under control of the court, . . . generally to do such acts respecting the property, as the court may authorize". RCW 7.60.040.

It is beyond dispute that the receiver's powers, under the court's control, include the power to dispose of the receivership property. *See, e.g., In re Spokane Sav.*

*Bank,* 198 Wash. 665, 89 P.2d 802 (1939). The statute, however, does not prescribe the manner in which receivers' sales are to be conducted. The general rule applied to receivers' sales is that, in the absence of statutory limitations, the receivership court has a broad discretion in determining the manner of disposition of receivership property. In a leading treatise, the principle is stated thus:

> A court of chancery is bound by no strict forms unless prescribed by statute, but looks to the substance of things and strives to best promote the interests of all concerned.
>
> Sales are generally made by the receiver publicly and at auction on due advertisement of the time, place and terms.

(Footnotes omitted.) 2 R. Clark, *Receivers* § 509(a), at 820 (3d ed. 1959).

Elsewhere, this treatise discusses in more detail general principles applying to receivership sales.

> A judicial sale is one made as a result of judicial proceedings by a receiver appointed by the court. A receiver's sale is a judicial sale. The court is the vendor, even though the person appointed to make the sale is the officer of the court. The sale is not absolute until confirmed. The order of confirmation gives the judicial sanction of the court, and when made relates back to the time of sale and cures all defects and irregularities except those founded in want of jurisdiction of the person or subject matter of the controversy or fraud.

(Footnotes omitted.) 2 R. Clark § 482, at 784–85.

It follows from these principles that a sale of property by a receiver requires two affirmative acts by the court. First, the sale must be specifically authorized by order of the court. 2 R. Clark § 512, at 825. And second, the sale must be confirmed by the court after an acceptable purchaser has been found. 2 R. Clark § 517, at 828–33. Until the court has confirmed the sale, it has the discretion to set it aside. 2 R. Clark § 519, at 834–36. *See also In re Spokane Sav. Bank,* 198 Wash. at 670.

The order of confirmation, therefore, marks the point at

which the sale becomes absolute. After confirmation, the sale may be set aside only for grounds such as fraud or mistake which would be sufficient to avoid such a sale between private parties. *In re Spokane Sav. Bank,* 198 Wash. at 670–71 (quoting *Morrison v. Burnette,* 154 F. 617 (8th Cir. 1907)). Prior to confirmation, however, the court has discretion to set aside a sale if necessary to obtain the best possible price for the property.

Confirmation of the sale, therefore, is of critical importance to the purchaser because it marks the point at which the court's discretion to set aside the sale is exhausted. The purchaser should be able to determine with certainty the order by which the sale is confirmed.

■ There is, however, a recognized exception to the general rule that a sale by a receiver is not complete and binding until the sale is subsequently reported and confirmed by the court.

> [I]f an offer for property in the hands of a receiver is reported to the court and a sale *to that purchaser in exact compliance* with the offer is authorized, the order is deemed an acceptance of the offer and a confirmation of the sale and no other and further confirmation is necessary.

(Italics ours.) *Tobey v. Poulin,* 141 Me. 58, 62, 38 A.2d 826, 828 (1944); *Shaw v. Robison,* 537 P.2d 487 (Utah 1975).

This exception does not apply in this case because the sale was not made to the original offeror. Here, the court authorized a sale to DHA and not DHJV. This does not constitute exact compliance with the offer so as to invoke the exception. *See Tobey v. Poulin* and *Shaw v. Robison, supra.*

Under these circumstances, the court's action in approving the original earnest money agreement does not constitute a confirmation of the sale. Nor does the court's ratification of the receiver's acts on April 13, 1979, constitute a confirmation of the sale, since the court did not know of the assignment to DHJV until September 1979.

Accordingly, we agree with the Court of Appeals that the

sale to DHJV was nòt confirmed and the trial court acted within its discretion in setting it aside.

STAFFORD, UTTER, BRACHTENBACH, and DOLLIVER, JJ., and CUNNINGHAM, J. Pro Tem., concur.

DORE, J. (dissenting)—The majority holds that a receivership sale should be confirmed by a specific order of the court entered after the sale has become final and that the trial court's approval of the earnest money agreement did not constitute final confirmation. I disagree.

I

Generally, a sale by a receiver of property in his charge is not complete and binding, and the purchaser acquires no title thereunder until the sale is confirmed by the court, *unless* the sale is made in conformity with authority to sell on specific terms expressly given beforehand. *Shaw v. Robison,* 537 P.2d 487, 490 (Utah 1975); *Harrison v. Brown,* 222 N.C. 610, 24 S.E.2d 470 (1943); *Tobey v. Poulin,* 141 Me. 58, 38 A.2d 826 (1944); *Wohlschlegel v. Uhlmann–Kihei, Inc.,* 662 P.2d 505 (Hawaii Ct. App. 1983); *see* J. High, *Receivers* § 199c (4th ed. 1910). The long accepted rule is set forth in *Tobey* at page 62.

It is elementary that a receivers sale is a judicial sale and the receiver acts only as an officer of the court, sells as and for the court, and sales conducted by him must be confirmed by the court in order to be valid. I Clark on Receivers (2d Ed.) §482, et seq.; 45 Am. Jur., §385, et seq. While it is the general rule that a sale by a receiver is not complete and binding until the sale is subsequently reported and confirmed by the court, if an offer for property in the hands of a receiver is reported to the court and a sale to that purchaser in exact compliance with the offer is authorized, the order is deemed an acceptance of the offer and a confirmation of the sale and no other and further confirmation is necessary. *Files* v. *Brown,* 124 Fed., 133, 138; *In re Denison,* 114 N. Y., 621, 21 N. E., 97; *Yount* v. *Fagin,* et al. (Texas Civ. A) 244 S. W.,

1036,1041; 53 Corpus Juris, 212. Confirmation of receivers sales by either of these methods has long been accepted as proper practice in this jurisdiction.

In *Shaw* where the court, in February 1974, approved recommendation of receiver and expressly directed him to accept offer to purchase corporate property by third party, it was not necessary for receiver, in May 1974, to *again* move the court to further confirm the sale and permit him to execute purchase agreement.

In the present case, the court confirmed the sale by approving as to form and signing the earnest money agreement, authorizing the receiver to sign "any further refinements" to "carry out the spirit and intent" of the agreement. Under the court's order, only changes "beyond the scope" of the earnest money receipt, agreement and addendum were to be brought before the court for approval. The two conditions of the earnest money agreement were both removed. The purchaser waived the first condition, and the second was met when permits were secured from the City of Seattle for the removal of sand and gravel and grading of the subject property.

The assignment of the earnest money agreement was not beyond the scope of the confirmation. A contract for the sale of real property is assignable. *Paullus v. Fowler,* 59 Wn.2d 204, 367 P.2d 130 (1961). There was no clause in the order approving the earnest money agreement prohibiting assignment. An assignee who receives full title and interest stands in the shoes of his assignor, acquiring the rights of the assignor. *Morse Electro Prods. Corp. v. Beneficial Indus. Loan Co.,* 90 Wn.2d 195, 579 P.2d 1341 (1978). An assignment does not change the scope of the contract or agreement on which it is based. As the assignment in question *did not change the scope of the receipt or agreement, there was no necessity for the judge to confirm the assignment.*

The trial court further entered an order on April 13, 1979 which "approved, ratified, and confirmed" all acts of the receiver up to that date. Accordingly, I would hold that the sale of the real property was properly confirmed.

## II

The final issue raised is whether certain fiduciary duties owed to the receivership and other limited partners were violated. Respondent's contention that Walton and Hanson, partners in Duwamish Heights Joint Venture (DHJV), breached a fiduciary duty in purchasing property from Duwamish Heights Associates (DHA) is fiction. Walton and Hanson were not involved in the execution of the earnest money agreement. The only dealings sought by DHJV with the receivership were to close the real estate transaction in accordance with the agreement entered into between the receivership and DHA some 19 months after the agreement had been executed and approved by the court. John Walton was employed by the receiver to assist him in the sale of various pieces of property, and had no association with the receivership other than being related to two other individuals who had interest in the property. Additionally, I see nothing inequitable and/or illegal in Walton and Hanson reaping some profit after doing work to procure the sand and gravel permits which increased the value of the property. Naturally, the property was worth substantially more after permits were secured from the City of Seattle.

I find helpful in my analysis the case of *Farley v. Davis*, 10 Wn.2d 62, 116 P.2d 263, 155 A.L.R. 1302 (1941). In *Farley*, Davis was a partner in a real estate company that had acted as agent for the collection of rentals on the subject property. Davis later purchased the property from the executor of the estate. The petitioner alleged that the price was inadequate and there was a breach of fiduciary duty on the part of Davis. The court said, at pages 79–80:

> Appellant's final contention is that Davis, and the real estate firm of which he was a member, stood in the relationship of a trustee or fiduciary to the heirs of the

estate, that they had special knowledge of the value of the property, and that therefore it should be held that Davis took title to the property in trust for appellant. In support of this contention, appellant cites a number of authorities to the effect that one standing in the position of trustee or fiduciary owes the beneficiary of the trust the utmost fidelity and loyalty. That principle of equity we readily accept, but we do not concede its application here. Davis was not a trustee of the appellant and the other heirs; he was but a real estate agent whose duties, at most, were to collect the rentals and to secure a purchaser of the property.

It is clear the duties of Walton in the present case were no greater than the duties of Davis in *Farley*. Even if Walton had been dealing directing with the receiver, rather than a third party, he would not be a fiduciary.

In every dissolution of a partnership where a receiver is appointed and a judicial sale follows, there is a possibility that one or more of the partners may buy at the sale. However, this is not wrongful so long as grounds exist for the dissolution of the partnership, the judicial sale is conducted properly and the partner/purchaser is not guilty of any breach of the fiduciary duty owed to his partners. *See Mandell v. Centrum Frontier Corp.,* 86 Ill. App. 3d 437, 407 N.E.2d 821 (1980). In fact, the most logical buyers of a dissolved partnership are the remaining partners. *Maras v. Stilinovich,* 268 N.W.2d 541, 544 (Minn. 1978).

The mere fact that Hanson is a partner in DHJV, which was assigned the earnest money agreement, does not indicate that there was a breach of a fiduciary duty owed to the partners of Overlook Heights Associates (OHA). Any of the partners of OHA were entitled to make an offer to purchase the property from the receiver. None did. Hanson only became involved when the successful purchaser assigned the earnest money agreement to DHJV 19 months later when valuable permits had been secured. Any possible fiduciary duty owed by Hanson to the dissolved partnership did not extend to the subsequent assignment of the earnest money agreement entered into by a third party.

Additionally, it should be noted that Hanson was merely a limited partner of OHA. A limited partner, though so called by custom, is not "in any sense" either a partner or a principal in the business or transactions of the partnership. "Succinctly put, a limited partnership interest in a business is in the nature of an investment." *Klein v. Weiss,* 284 Md. 36, 52, 395 A.2d 126, 136 (1978). The relationship between the general and limited partner is a fiduciary one similar to that existing between a corporate director and a share-holder, or a trustee and a beneficiary. *Klein,* at 52; *Partnership Equities, Inc. v. Marten,* 15 Mass. App. Ct. 42, 443 N.E.2d 134, 137 (1982); *Watson v. Limited Partners of WCKT, Ltd.,* 570 S.W.2d 179, 182 (Tex. Civ. App. 1978). Accordingly, Hanson, as a limited partner, owed no fiduciary duty to the partnership and was entitled to purchase from the receiver.

## CONCLUSION

The majority is in error in finding that the trial court did not confirm the sale.

I would hold that the Superior Court properly confirmed the sale to Duwamish Heights Joint Venture, and that there was no violation of any fiduciary duties by the parties.

I would reverse the trial court's order setting aside the sale from the receivership to Duwamish Heights Associates and the subsequent assignment to Duwamish Heights Joint Venture, and remand to the trial court with instructions to close the transaction in accordance with the terms of the earnest money receipt and agreement signed by the parties.

WILLIAMS, C.J., and DIMMICK, J., concur with DORE, J.

Reconsideration denied December 13, 1983.