**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| UMPQUA BANK, | No. 47224-4-II |
| Respondent, | |
| v. | |
| SHASTA APARTMENTS, LLC; CHARLES R. JOHNSON, II, and ELIZABETH A. JOHNSON, husband and wife, | PUBLISHED OPINION |
| Appellants. | |

SUTTON, J. — We are asked to decide whether the plain language of the receivership statute precludes a secured creditor from obtaining a post-sale deficiency judgment against a grantor whose property secured the loan and against a guarantor on the loan after a court-approved receiver's sale of the secured property. The superior court granted summary judgment and entered a deficiency judgment in favor of Umpqua Bank, a secured creditor, against Shasta Apartments LLC, the grantor whose property secured the loan held by Umpqua, and against Charles Johnson,[1] the guarantor on the loan. The superior court also denied summary judgment to Shasta and Johnson. Shasta and Johnson argue that, as a matter of law, Umpqua was not entitled to a deficiency judgment against them because (1) chapter 7.60 RCW does not provide for recovery of a deficiency judgment and (2) a receiver's sale of property "free and clear of all liens and rights of

---

[1] We refer to Charles R. Johnson, II and Elizabeth A. Johnson, husband and wife, as "Charles Johnson" or "Johnson" for ease of reference; we mean no disrespect.

redemption" is equivalent to a nonjudicial foreclosure sale under chapter 61.24 RCW (Deed of Trust Act or DTA), which precludes a deficiency judgment.

We hold that (1) the plain meaning of chapter 7.60 RCW does not preclude a secured creditor from pursuing a deficiency judgment against a grantor and guarantor after a court-approved receiver's sale of the grantor's property and (2) Umpqua was entitled to pursue a deficiency judgment against Shasta and Johnson. Thus, the superior court's summary judgment order granting Umpqua a deficiency judgment against Shasta and Johnson was proper. We also hold that, as the prevailing party, Umpqua is entitled to reasonable attorney fees on appeal. Accordingly, we affirm.

## FACTS

### I. BACKGROUND FACTS

On June 15, 2007, Shasta, the grantor, made and delivered a promissory note to Evergreen Bank (Evergreen). To secure the note, Shasta executed and delivered a deed of trust on Shasta's property (Shasta DOT) to Evergreen, which Evergreen recorded.

The Shasta DOT contains the following relevant provisions:

**GRANTOR'S WAIVERS.** Grantor waives all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Lender from bringing any action against Grantor, including a claim for deficiency to the extent Lender is otherwise entitled to a claim for deficiency, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale.

. . . .

**RIGHTS AND REMEDIES ON DEFAULT**

. . . .

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding or pending foreclosure or sale, and

2

> to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. . . . Lender's right to the appointment of a receiver shall exists whether or not the apparent value of the Property exceeds the indebtedness by a substantial amount.
>
> . . . .
>
> **Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to receive such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal.

CP at 56, 60. As additional security for the note, Shasta executed an assignment of rents in favor of Evergreen.[2]

From December 2007 to August 2009, Shasta modified the loan three times, executing promissory notes each time. In addition to security issued in the original and first two loan modifications, Shasta secured the August 2009 note by a commercial guaranty signed by Charles Johnson, a business loan agreement between Shasta and Evergreen, a second commercial guaranty from Callaway Apartments, LLC (Callaway), and a deed of trust made and delivered by Johnson to Evergreen.[3]

The Washington Department of Financial Institutions closed Evergreen in January 2010 and the bank went into receivership. Umpqua Bank (Umpqua) acquired certain assets of Evergreen, including the Shasta loan.[4]

---

[2] The assignment of rents also gave the secured creditor the right to appoint a receiver. The language of the provision is the same of that as the Shasta DOT.

[3] Charles Johnson is the registered agent for both Shasta and Callaway, and signed all of the documents executing the promissory notes, deeds of trust, business loan agreements, and commercial guarantees.

[4] Shasta does not dispute that Umpqua is the owner and holder of the promissory note, replacement notes, and security instruments issued by Shasta, Callaway, and Johnson.

No. 47224-4-II

After Umpqua's acquisition of the Shasta loan, Shasta modified the loan again in 2010 and 2011. For the last loan modification, in January 2011, Umpqua and Shasta executed a change in terms agreement, modifying the amount due under a new replacement note, and executed a business loan agreement and commercial security agreement as additional collateral. The commercial security agreement provided Umpqua the right to appointment of a receiver under chapter 7.60 RCW.[5]

After August 18, 2011, Shasta failed to make any further payments on its loan, and Umpqua issued a notice of default in November. The principal loan balance at the time Shasta stopped making payments was $1,044,365.27, including accrued interest.

II. PROCEDURAL HISTORY

In March 2012, Umpqua petitioned the superior court to appoint a general receiver under chapter 7.60 RCW and for judicial foreclosure under the DTA on the Shasta DOT.[6] Umpqua's petition included in its request for relief that Umpqua "have judgment for any deficiency." Clerk's Papers (CP) at 10.

In April 2012, the superior court appointed a general receiver for Shasta and gave the receiver authority to sell Shasta's property "free and clear of liens and of all rights of redemption." CP at 101. The superior court ordered that Umpqua apply all proceeds to the "reduction of the

---

[5] Callaway and Johnson also executed additional commercial security agreements and financing statements in security of the modification. Johnson executed a second security agreement in January 2011 in favor of Umpqua.

[6] Shasta and Johnson incorrectly state that the petition sought to "sell the property *and/or* judicially foreclose the property." Br. of Appellants at 4.

4

loan" but it also stated that Umpqua's acceptance of proceeds "shall not constitute a waiver or cure of the defaults under the Deed of Trust nor a defense to any sale, or judicial or nonjudicial foreclosure of the Deed of Trust." CP at 103-04. Shasta did not object to the receiver's appointment or other terms in the court's order.[7]

On May 25, 2012, the court entered a default order against the Johnsons and the other guarantor, Callaway, based on their failure to appear and Shasta's default on the loan that they had guaranteed. Between March 19 and May 25, neither Shasta, Johnson, nor Callaway objected or responded to any of Umpqua's pleadings or the receiver's motions, notices of compensation, or reports.

On July 26, 2013, the receiver moved to have the superior court approve (1) the sale of Shasta's real property "free and clear of liens," (2) the payment to the real estate broker, and (3) the "assumption and assignment of leases." CP at 198. The motion was supported by the receiver's declaration, in which he stated that the sale of the real property was "in the best interest of the receivership estate." CP at 212. The receiver also moved for an exemption from the real estate excise tax under RCW 82.45.010(3)(i) because "this is a court-ordered sale in an action with a pending claim for judicial foreclosure." CP at 212.

The superior court granted the receiver's motions and approved the sale of the property to a third party for $550,000 on August 9, 2013. The superior court's order stated that the sale of the property "shall be free and clear of any and all liens . . . and of all rights of redemption." CP at

---

[7] Neither Johnson nor Callaway, the guarantors, ever objected to the superior court's orders and neither entered a notice of appearance in response to Umpqua's petition or the superior court's order appointing the receiver and order of sale.

237. Further, the superior court's order stated "that the sale of the [p]roperty shall be considered an order of sale by the [c]ourt to execute upon a judgment for the purposes of RCW 82.45.010(3)(i)," exempting the sale from real estate excise taxes. CP at 238. Neither Shasta, Johnson, nor Callaway raised any issues or challenges to the sale, nor did they file any pleadings between Umpqua's March 2012 petition and the August 2013 sale, and Shasta never responded to Umpqua's March 2012 petition, despite proper service of process.

On June 13, 2014, Umpqua moved for an order of default against Shasta and default judgment against Shasta, Johnson, and Callaway. At the time of Umpqua's motion for default and default judgment, and after the sale of Shasta's real property, a deficiency of $877,161.03 existed, which included the remaining loan principal, accrued interest, appraisal and title costs, utilities, insurance, receivership expenses, repairs and maintenance, taxes, and state fees. The deficiency amount did not include Umpqua's attorney fees and litigation costs.

On June 24, 2014, Shasta and Johnson filed their first notice of appearance. On July 7, Shasta filed its answer and affirmative defenses to Umpqua's March 2012 petition.[8]

---

[8] Shasta does not allege that service of process of Umpqua's initial pleadings, or any of the other pleadings in the case, were improper or that it lacked notice of the proceedings.

6

No. 47224-4-II

In November 2014, Umpqua moved for summary judgment under CR 55(b)[9] and CR 56(c), arguing that there were no genuine issues of material fact because a prior order of default had been entered against Shasta and Johnson and that it was entitled to a deficiency judgment against Shasta and Johnson. Shasta and Johnson also moved for summary judgment, arguing that Umpqua was not entitled to a deficiency judgment as a matter of law.

The superior court granted Umpqua's motion, denied Shasta and Johnson's motion, awarded Umpqua attorney fees and costs, and entered a deficiency judgment against Shasta and Johnson in the amount of $932,997.22. Shasta and Johnson appeal.

ANALYSIS

I. STATUTORY INTERPRETATION

Shasta and Johnson argue that a secured creditor's right to a deficiency judgment is statutory and that chapter 7.60 RCW's (Receivership Statute), silence on the issue of a deficiency

---

[9] When proof of service is on file with the court, under CR 55(b) the court may enter default judgment against a party under two circumstances:

> (1) *When Amount Certain.* When the claim against a party, whose default has been entered under section (a), is for a sum certain or for a sum which can by computation be made certain, the court upon motion and affidavit of the amount due shall enter judgment for that amount and costs against the party in default, if the party is not an infant or incompetent person.
>
> . . .
>
> (2) *When Amount Uncertain.* If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings as are deemed necessary or, when required by statute, shall have such matters resolved by a jury. Findings of fact and conclusions of law are required under this subsection.

judgment precludes Umpqua from obtaining a deficiency judgment after the court ordered and approved receiver's sale of Shasta's property that secured the loan. We disagree.

Statutory interpretation is a question of law that we review de novo. *Beal Bank, SSB v. Sarich*, 161 Wn.2d 544, 547, 167 P.3d 555 (2007). The goal of statutory interpretation is to determine and give effect to the legislature's intent. *Birgen v. Dep't of Labor & Indus.*, 186 Wn. App. 851, 857, 347 P.3d 503, *review denied*, 184 Wn.2d 1012 (2015). To determine legislative intent, we first look to the plain language of the statute and consider the meaning of the provision at issue, the context of the statute, and related statutes. *Birgen*, 186 Wn. App. at 857. If a statute is unambiguous, we apply the statute's plain meaning without considering other sources of legislative intent. *Birgen*, 186 Wn. App. at 857-58.

If a statute is silent on an issue, we generally decline to read into the statute what is not there. *Birgen*, 186 Wn. App. at 859. We do not "'add words where the legislature has chosen not to include them,'" and we construe statutes assuming that the legislature meant exactly what it said. *Birgen*, 186 Wn. App. at 858 (quoting *Rest. Dev., Inc. v. Canawill, Inc.*, 150 Wn.2d 674, 682, 80 P.3d 598 (2003)). Further, we "'resist the temptation to rewrite an unambiguous statute to suit our notions of what is good public policy, recognizing the principle that the drafting of a statute is a legislative, not a judicial, function.'" *Birgen* 186 Wn. App. at 862 (internal quotations omitted) (quoting *Sedlacek v. Hillis*, 145 Wn.2d 379, 390, 36 P.3d 1014 (2001)).

A. PLAIN LANGUAGE

The issue is whether the plain language of the Receivership Statute precludes a secured creditor from obtaining a deficiency judgment against a grantor and guarantor after a court-ordered and approved receiver's sale of the grantor's property securing the loan. It does not.

Under the Receivership Statute, the court appoints a general receiver to take possession and control of "all or substantially all" of a person's or business's property with authority to liquidate that property and wind up affairs. RCW 7.60.015. The court may appoint a general receiver

> [o]n application of any party, when the party is determined to have a probable right to or interest in property that is a subject of the action and in the possession of an adverse party, or when the property or its revenue-producing potential is in danger of being lost or materially injured or impaired. A receiver may be appointed under this subsection . . . whether or not the application for appointment of a receiver is *combined with, or is ancillary to*, an action seeking a money judgment or other relief.

RCW 7.60.025(1)(a) (emphasis added).

Further, the court may appoint a receiver upon the commencement of a "judicial action" or nonjudicial foreclosure proceeding

> when the interest in the property that is the subject of such an action or proceeding of the person seeking the receiver's appointment is determined to be probable and either:
>
> (i) The property or its revenue-producing potential is in danger of being lost or materially injured or impaired; or
>
> (ii) The appointment of a receiver with respect to the real or personal property that is the subject of the action or proceeding is provided for by agreement or is reasonably necessary to effectuate or enforce an assignment of rents or other revenues from the property.

RCW 7.60.025(1)(b).

The plain language of the Receivership Statute does not expressly permit or preclude a secured creditor of a commercial loan from pursuing a deficiency judgment against the grantor and/or guarantor after a court-approved receiver sale of the grantor's property securing the loan.

B.  STATUTORY PURPOSE

In interpreting the plain language of the Receivership Statute, we are guided by the legislature's stated purpose in enacting the statute.  When the statute at issue or a related statute includes an applicable statement of purpose, we must read the statute in a manner consistent with its stated purpose.  *Birgen*, 186 Wn. App. at 862.  The legislature enacted the Receivership Statute

> to create more comprehensive, streamlined, and cost-effective procedures applicable to proceedings in which property of a person is administered by the courts of this state for the benefit of creditors and other persons having an interest therein.

SUBSTITUTE S.B. 6189, at 1-2, 88th Leg., Reg. Sess. (Wash. 2004).

The legislature intended the Receivership Statute to "benefit creditors" having interests in property administered by the courts.  Thus, absent law or persuasive policy to the contrary, we do not read a provision into the statute that inhibits a secured creditor from obtaining satisfaction of the debt in a deficiency judgment.  Such a reading would be contrary to the legislature's intent of providing a "more comprehensive, streamlined, and cost-effective" procedure for the "benefit of creditors."  *See* SUBSTITUTE S.B. 6189, 88th Leg., Reg. Sess. (Wash. 2004).

Accepting Shasta's and Johnson's argument requires that we read language into the Receivership Statute that is not there.  If the legislature had wanted to preclude a deficiency judgment after a receiver's sale under the Receivership Statute, it would have included that language in the statute.  Thus, we hold that the plain language of the Receivership Statute does not preclude a secured creditor from pursuing a post-sale deficiency judgment against a grantor whose property secured the loan or against a guarantor on the loan.

II. SUMMARY JUDGMENT

Shasta and Johnson argue that the superior court erred when it granted Umpqua's motion for summary judgment and denied their motion for summary judgment because the receiver's sale of Shasta's real property "free and clear of liens and all rights of redemption" was, in effect, a nonjudicial foreclosure under the Deed of Trust Act, and that statute precluded Umpqua from pursuing a deficiency judgment. We disagree. Under a plain reading of the Deed of Trust Act and Receivership Statute, Umpqua was entitled to a deficiency judgment and summary judgment was proper as a matter of law.

We review a superior court's summary judgment order de novo, performing the same inquiry as the superior court. *Beal Bank*, 161 Wn.2d at 547. Summary judgment is proper when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.[10] CR 56(c).

The beneficiary of a trust deed elects from three remedies upon a borrower's default, "'(1) where the trust deed secures a note, sue on the note; (2) foreclose under existing mortgage foreclosure proceedings; or (3) foreclose pursuant to [the DTA].'" *Thompson v. Smith*, 58 Wn. App. 361, 366, 793 P.2d 449 (1990) (quoting Gose, *The Trust Deed Act in Washington*, 41 Wash. L. Rev. 94 (1966)).

---

[10] Shasta does not challenge the appointment of the receiver, the sale of the property, or the amount of the deficiency.

The DTA generally bars deficiency judgments,

> Except to the extent permitted in this section for deeds of trust securing commercial loans, a deficiency judgment shall not be obtained on the obligations secured by a deed of trust against any borrower, grantor, or guarantor after a trustee's sale under that deed of trust.

RCW 61.24.100(1). In a nonjudicial foreclosure initiated under the DTA, the borrower relinquishes the right to redemption, allowing the property to be sold at a trustee's sale more quickly than in a judicial foreclosure. *Wash. Fed. v. Gentry*, 179 Wn. App. 470, 476-77, 319 P.3d 823 (2014), *aff'd*, 182 Wn.2d 335 (2015). This more efficient process precludes secured creditors from obtaining deficiency judgments when they foreclose nonjudicially. *Gentry*, 179 Wn. App. at 477.

But even with the provisions of the DTA, secured creditors retain the right to judicial foreclosures, preserving the right to obtain a deficiency judgment.[11] *Gentry*, 179 Wn. App. at 477. A deficiency judgment arises if the amount of a judgment in a judicial foreclosure exceeds the value of the security sold at the foreclosure sale. *Boeing Emp. Credit Union v. Burns*, 167 Wn. App. 265, 282, 272 P.3d 908 (2012). Unless it elects to foreclose on the deed of trust pursuant to RCW 61.24.040, a creditor is not precluded from obtaining a deficiency judgment. *Helbling Bros. v. Turner*, 14 Wn. App. 494, 497-98, 542 P.2d 1257 (1975).

---

[11] RCW 61.12.070 directs that the court "shall direct in the decree of foreclosure that the balance due on the mortgage, and costs which may remain unsatisfied after the sale of the mortgaged premises, shall be satisfied from any property of the mortgage debtor," unless explicitly waived by the secured creditor.

The Receivership Statute distinguishes a "judicial action" from a nonjudicial foreclosure proceeding under the DTA.[12] RCW 7.60.025(1)(b)(ii). The Receivership Statute may be used in conjunction with a judicial action or nonjudicial foreclosure action; thus, a receivership is secondary to the main cause of action and not itself an independent remedy. *See* RCW 7.60.025(1)(b); *see also Grays Harbor Commercial Co. v. Fifer*, 97 Wash. 380, 382, 166 P. 770 (1917).

Further, Washington case law has long established that an appointed receiver is an officer of the court subject to the court's control. *See Ginsberg v. Katz*, 27 Wn. App. 593, 597, 619 P.2d 995 (1980) ("[T]he receiver is an officer of the court."); *see also State ex rel. Ewing v. Morris*, 120 Wash. 146, 153, 207 P. 18 (1922) ("[A] receiver is an officer of the court, and he is required to account to the court for all receipts and disbursements of the funds received by him."). As an officer of the court, a receiver's sale is a judicial sale.[13] *Walton v. Severson*, 100 Wn.2d 446, 451-52, 670 P.2d 639 (1983) ("'A judicial sale is one made as a result of judicial proceedings by a receiver appointed by the court.'") (quoting 2 R. Clark, *Receivers*, § 482, at 784-85 (3d ed. 1959).

---

[12] RCW 7.60.025 provides, in relevant part,

> [A] judicial action is commenced as provided in [CR 3(a)] a nonjudicial proceeding is commenced under chapter 61.24 RCW [the Deed of Trust Act, DTA] upon the service of notice of default described in RCW 61.24.030(8), and a proceeding for forfeiture is commenced under chapter 61.30 RCW upon the recording of the notice of intent to forfeit described in RCW 61.30.060.

RCW 7.60.025(1)(b)(ii).

[13] We also note that obtaining a receiver's sale under chapter 7.60 RCW is a more cumbersome process to sell a property than either a judicial foreclosure under chapter 61.12 RCW or a non-judicial foreclosure under chapter 61.24 RCW.

Umpqua initiated a "judicial action" under CR 3(a) when it filed its petition for the appointment of a general receiver and judicial foreclosure, and its motion to show cause on March 19, 2012, and delivered service of process to Shasta on March 23 and 24. There is nothing in the record to indicate that Umpqua initiated any nonjudicial foreclosure proceedings under the DTA on the Shasta DOT. The superior court, under the authority provided in RCW 7.60.015 and .025, appointed the receiver, authorized the receiver to liquidate the property, and approved the subsequent sale. Further, the superior court categorized the sale as a judicial sale.

Thus, because Umpqua did not sell or attempt to foreclose on the property nonjudicially through a trustee's sale, because a receiver's sale is not a foreclosure sale but a judicial sale, and because the Receivership Statute does not preclude deficiency judgments after a receiver's sale of property, Umpqua was entitled to pursue a deficiency judgment on the remaining amount of the note.[14] Therefore, Umpqua was entitled to summary judgment as a matter of law. Accordingly, we hold that the superior court's grant of summary judgment in favor of Umpqua was proper.

---

[14] Johnson did not secure the commercial loan guaranty with a deed of trust or own the foreclosed property; therefore, he was liable for a deficiency judgment on the note regardless of whether Shasta was liable for a deficiency judgment or not. RCW 61.24.100.

No. 47224-4-II

ATTORNEY FEES AND COSTS

Both Shasta and Umpqua ask us to award them attorney fees and costs on appeal under RAP 18.1. As the prevailing party, Umpqua is entitled to reasonable attorney fees and costs on appeal.

"Fees may be awarded as part of the cost of litigation when there is a contract, statute, or recognized ground in equity for awarding such fees." *Thompson v. Lennox*, 151 Wn. App. 479, 491, 212 P.3d 597 (2009). "'A contractual provision for an award of attorney's fees at trial supports an award of attorney's fees on appeal under RAP 18.1.'" *Thompson*, 151 Wn App. at 491 (quoting *W. Coast Stationary Eng'rs Welfare Fund* v. *City of Kennewick*, 39 Wn. App. 466, 477, 694 P.2d 1101 (1985)). Here, the parties agreed that,

> [i]f [Umpqua] institutes any suit or action to enforce any of the terms of this Assignment, [Umpqua] shall be entitled to receive such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal.

CP at 52, 60. Thus, we hold that Umpqua is entitled to reasonable attorney fees and costs on appeal.

CONCLUSION

We hold that (1) chapter 7.60 RCW does not preclude a secured creditor from pursuing a deficiency judgment against a grantor and guarantor after a court-ordered and approved receiver's sale of the grantor's property and (2) Umpqua was entitled to pursue a deficiency judgment against

15

No. 47224-4-II

Shasta and Johnson. Therefore, the superior court's summary judgment order granting Umpqua a deficiency judgment against Shasta and Johnson and denying Shasta's summary judgment motion was proper. We also hold that, as the prevailing party, Umpqua, is entitled to reasonable attorney fees and costs on appeal. We affirm.

SUTTON, J.

We concur:

BJORGEN, C.J.

MAXA, J.