# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| MUFG UNION BANK, N.A., successor in interest to the FDIC as Receiver of Frontier Bank, | No.  47755-6-II |
| Appellant, | |
| v. | |
| RANDY CAMPADORE, a single person; RAYMOND E. PELZEL, and the marital community composed of RAYMOND E. PELZEL and MERRILEE PELZEL; WILLIAM RILEY and ALTHEA RILEY, husband and wife, and the marital community composed thereof, | UNPUBLISHED OPINION |
| Respondents. | |

JOHANSON, J.  —  MUFG Union Bank NA (Union Bank) appeals the superior court's

rulings on cross motions for summary judgment filed by Union Bank and by Randy Campadore

and four others (collectively, the Guarantors).  We conclude that *Umpqua Bank v. Shasta*

*Apartments, LLC*[1] controls the primary question presented—the receivership statute does not

preclude a deficiency judgment after a receiver's sale.  Thus, we reverse the superior court's

rulings granting summary judgment for the Guarantors and denying summary judgment for Union

---

[1] 194 Wn. App. 685, 378 P.3d 585, *review denied*, 186 Wn.2d 1026 (2016).

Bank and remand to enter summary judgment in Union Bank's favor. Finally, we award Union Bank its appellate attorney fees.

## FACTS

### I. BACKGROUND FACTS[2]

The Guarantors—Campadore, Raymond E. and Merrilee Pelzel, and William and Althea Riley—were the members of Voight Creek Estates LLC (Voight Creek). Voight Creek owned undeveloped land in Orting (the Orting property).

#### A. PROMISSORY NOTE AND DEED OF TRUST

In April 2006, Voight Creek executed a promissory note to Frontier Bank for $2.5 million, secured by a deed of trust on the Orting property. In the event of a default, the deed of trust provided for a receiver's appointment, among other remedies, but did not authorize the receiver to sell the property.

Frontier Bank and Voight Creek later changed the promissory note's maturity date several times, with the note ultimately maturing in July 2008, but not any other note terms. A Federal Deposit Insurance Corporation (FDIC) receiver subsequently took over Frontier Bank. In March 2012, Union Bank purchased the promissory note and other assets from Frontier Bank's FDIC receiver.

#### B. GUARANTIES

In April 2006, the Guarantors each executed commercial guaranties of the promissory note. Each Guarantor "absolutely and unconditionally" guaranteed payment and satisfaction of Voight

---

[2] The facts in section I are undisputed and are taken from exhibits supporting the parties' cross motions for summary judgment.

Creek's indebtedness and had "unlimited" liability and "continuing" obligations. Clerk's Papers (CP) at 124, 128, 132, 136, 140. And each Guarantor waived "any and all rights or defenses based on suretyship or impairment of collateral," including all defenses "other than actual payment and performance of the [i]ndebtedness." CP at 125, 129, 133, 137, 141.

### C.  DEFAULT AND RECEIVERSHIP

The note was not paid, and the Guarantors defaulted on their guaranties. Union Bank then moved the superior court to appoint a general receiver.

1.  AGREED ORDER FOR RECEIVERSHIP

In April 2012, the superior court considered the parties' "motion and stipulation" and entered an "Agreed Order" that appointed a general receiver after finding that the appointment was reasonably necessary and that other remedies were unavailable or inadequate. CP at 151. The Agreed Order vested the receiver with the authority to sell the Orting property subject to the superior court's approval, and it listed Union Bank and Voight Creek as the only parties.

Voight Creek consented to the general receiver's appointment as being "in the best interest of all parties" to the litigation. CP at 166. Guarantors William Riley, Campadore, and Raymond Pelzel signed an amended Agreed Order[3] on behalf of Voight Creek. Each of the Guarantors was served with a copy of the Agreed Order.

2.  ORTING PROPERTY'S SALE

In June 2013, the receiver sought the superior court's approval of the Orting property's sale for $360,000. Guarantor William Riley objected to the sale because he alleged that the sale price

---

[3] The amended Agreed Order updated the property's legal description but was otherwise substantively the same as the original Agreed Order.

was below market value. Riley filed an objection on behalf of "one of the owners and guarantors of Voight Creek" and claimed that the property could be broken into lots and sold for $1,775,000 altogether based on Riley's "market analysis." CP at 199, 209.

In July 2013, the superior court heard the receiver's motion to sell the Orting property. The superior court noted that one of the owners objected to the sale. After considering the receiver's motion and the objection, the superior court authorized the receiver to sell the Orting property. The superior court terminated the receivership after the sale.

## II. DEFAULT JUDGMENT LAWSUIT

In August 2014, Union Bank sued the Guarantors for approximately $3.14 million on the basis that the Guarantors were liable for the post-receiver's sale deficiency.

## A. UNION BANK'S SUMMARY JUDGMENT MOTION

In March 2015, Union Bank moved for summary judgment on the Guarantors' liability and the amount of the deficiency. The Guarantors responded that summary judgment was inappropriate as a matter of law because Union Bank sought recovery predicated on a "fictitious legal theory": that a creditor may bring a deficiency judgment against guarantors under the receivership statute. CP at 291. And the Guarantors noted that the deed of trust did not authorize a general receiver, with the power to sell the Orting property. The Guarantors contended also that the determination of the property's value was "inherently factual" and inappropriate for summary judgment and that a factual issue existed regarding the value and thus the amount of the deficiency. CP at 301.

Union Bank replied that all parties had agreed to a general receiver's appointment and that the guaranties waived all the arguments that the Guarantors asserted. And Union Bank contended

4

that the Guarantors had failed to show that there was an issue of fact regarding the Orting property's value when it was sold.

In support, the receiver submitted a declaration and exhibits explaining that he had consulted with a septic system engineer and a developer, who had advised the receiver that the Orting property was not fit for development. After negotiating at arms' length with the offeror, the receiver accepted the strongest offer and then moved to authorize the sale.

## B. GUARANTORS' SUMMARY JUDGMENT MOTION

In March 2015, the Guarantors filed a cross motion for summary judgment in which they argued that as a matter of law Union Bank could not obtain a deficiency judgment against the Guarantors under the receivership statute. The Guarantors argued also that they did not have standing to object to the receiver's sale and thus were deprived of an opportunity to challenge the Orting property's sale. And the Guarantors contended that the deed of trust did not authorize a general receiver's appointment, with the power to sell the property.

Union Bank responded that the guaranties' terms obligated the Guarantors to pay the remaining loan balance after the receiver's sale. Thus, Union Bank claimed, it had a contractual right to pursue a deficiency judgment. And Union Bank argued that in the Agreed Order, Voight Creek had stipulated to a general receiver's appointment.

## C. ORDER ON SUMMARY JUDGMENT

In April 2015, the trial court heard argument on the summary judgment motions. The trial court denied Union Bank's summary judgment motion and granted the Guarantors' cross motion. Union Bank filed, and the superior court subsequently denied, a reconsideration motion. Union Bank now appeals the denial of its summary judgment and reconsideration motions and grant of

the Guarantor's summary judgment motion. Of the Guarantors, only Campadore responds to Union Bank's appeal.

## ANALYSIS

### I. STANDARD OF REVIEW AND LEGAL PRINCIPLES

We review de novo an order on summary judgment and engage in the same inquiry as the trial court. *Munich v. Skagit Emergency Cmmc'ns Ctr.*, 175 Wn.2d 871, 877, 288 P.3d 328 (2012). Additionally, statutory interpretation is a question of law that we review de novo. *Ruvalcaba v. Kwang Ho Baek*, 175 Wn.2d 1, 6, 282 P.3d 1083 (2012). When reviewing a summary judgment order, we consider all facts and reasonable inferences in the light most favorable to the nonmoving party. *Munich*, 175 Wn.2d at 877. And we review only the evidence and issues called to the attention of the trial court. RAP 9.12. Summary judgment is appropriate if the pleadings, admissions on file, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c).

"'Receiver' means a person appointed by the court as the court's agent, and subject to the court's direction, to take possession of, manage, or dispose of property of a person." RCW 7.60.005(10). A superior court may appoint a receiver "[o]n application of any party, when the party is determined to have a probable right to or interest in property that is a subject of the action and in the possession of an adverse party." RCW 7.60.025(1)(a). But the superior court cannot appoint a receiver under this subsection unless it first "determines that the appointment . . . is reasonably necessary and that other available remedies either are not available or are inadequate." RCW 7.60.025(1).

6

II. GRANT OF GUARANTORS' CROSS MOTION FOR SUMMARY JUDGMENT

Union Bank and Campadore disagree regarding whether the superior court improperly granted the Guarantors' summary judgment motion as a matter of law. We conclude that the superior court erred when it granted the Guarantors' summary judgment motion.

A. DEFICIENCY JUDGMENTS UNDER THE RECEIVERSHIP STATUTE

The primary issue on appeal is whether the receivership statute precludes a secured creditor from obtaining a deficiency judgment against guarantors after a court-appointed receiver sells property that secured the creditor's interest. Campadore argues that the receivership statute's silence on deficiency judgments precludes Union Bank from obtaining a deficiency judgment, so that the superior court properly granted Campadore's summary judgment motion on this basis. We disagree.

Our decision in *Umpqua Bank* resolves this issue. In *Umpqua Bank*, a company executed a promissory note to a bank secured by a deed of trust on the company's property and later, a guaranty. 194 Wn. App. at 688-89. Although the initial deed of trust provided for a custodial receiver, the bank and the company subsequently executed additional collateral that provided for the right to a receiver under chapter 7.60 RCW. *Umpqua Bank*, 194 Wn. App. at 689-90. When the company defaulted on the note, the bank requested the appointment of a general receiver under chapter 7.60 RCW and judicial foreclosure[4] on the deed of trust. *Umpqua Bank*, 194 Wn. App. at 690.

---

[4] RCW 7.60.025(1)(b) allows for the appointment of a receiver "after commencement of any judicial action or nonjudicial proceeding to foreclose upon any lien against or for forfeiture of any interest in" real property where the property is in danger of being lost or the appointment of a receiver is provided for by agreement.

The superior court appointed a general receiver, with authority to sell the property. *Umpqua Bank*, 194 Wn. App. at 690. The superior court then approved the receiver's motion to sell the property, and the bank moved for an order of default against the company and guarantor. *Umpqua Bank*, 194 Wn. App. at 691-92. In cross motions for summary judgment, the parties disputed whether the receivership statute precluded the bank from obtaining a deficiency judgment against the company and the guarantor. *Umpqua Bank*, 194 Wn. App. at 692-93. After the superior court granted the bank's summary judgment motion, the company and the guarantor appealed. *Umpqua Bank*, 194 Wn. App. at 693.

We held that "the plain meaning of chapter 7.60 RCW does not preclude a secured creditor from pursuing a deficiency judgment against a grantor and guarantor after a court-approved receiver's sale of the grantor's property." *Umpqua Bank*, 194 Wn. App. at 688. Thus, the bank was entitled to pursue a deficiency judgment against the guarantor and the company, and the summary judgment order was proper. *Umpqua Bank*, 194 Wn. App. at 688.

Here, the Guarantors argued that as a matter of law, the receivership statute precluded Union Bank from obtaining a deficiency judgment against them. Under *Umpqua Bank*, the trial court incorrectly granted the Guarantors' summary judgment motion against Union Bank on the basis that the receivership statute did not allow a deficiency judgment.

Campadore further argues that the receivership statute should not be read to allow a creditor to circumvent the protections given to guarantors in nonjudicial foreclosures under the deed of trust act, chapter 61.24 RCW. Again, we disagree.

In *Umpqua Bank*, we addressed the appellants' argument that the receiver's sale was essentially a nonjudicial foreclosure and thus that a deficiency judgment was not allowed. 194

8

Wn. App. at 696.  We noted that even under the deed of trust act, a deficiency judgment may be brought after a *judicial* foreclosure.  *Umpqua Bank*, 194 Wn. App. at 697.  And we held that

> because [the bank] did not sell or attempt to foreclose on the property nonjudicially through a trustee's sale, because a receiver's sale is not a foreclosure sale but a judicial sale, and because the Receivership Statute does not preclude deficiency judgments after a receiver's sale of property, [the bank] was entitled to pursue a deficiency judgment.

*Umpqua Bank*, 194 Wn. App. at 699.

As in *Umpqua Bank*, Union Bank did not attempt to nonjudicially foreclose on the property and the receiver's sale was a judicial sale.  As discussed, we adhere to *Umpqua Bank*'s holding that the receivership statute's plain language does not foreclose a deficiency judgment.  For these reasons, the trial court erred when it granted the Guarantors' summary judgment motion.

### B.  *UMPQUA BANK* IS NOT MATERIALLY DISTINGUISHABLE

Campadore asserts several reasons to distinguish *Umpqua Bank*.  But Campadore fails to provide a principled basis upon which to hold that *Umpqua Bank* does not apply here.

First, Campadore argues that *Umpqua Bank*, unlike here, involved an ongoing judicial foreclosure.  It is true that in *Umpqua Bank*, we noted that the receivership was brought under RCW 7.60.025(1)(b), which authorizes a court-appointed receiver if provided for by agreement and after the commencement of a foreclosure proceeding.  But RCW 7.60.025(1)(a) also allows the appointment of a receiver on application of an interested party "whether or not the application . . . is combined with . . . an action seeking a money judgment."  Regardless of whether the trial court appoints the receiver under RCW 7.60.025(1)(a) or (1)(b), the receiver remains an "officer of the court," and thus "a receiver's sale is a judicial sale."  *Umpqua Bank*, 194 Wn. App. at 698.  Thus, we decline to depart from *Umpqua Bank*'s holding on this ground.

Second, Campadore argues that we should decline to follow *Umpqua Bank*'s holding because unlike in *Umpqua Bank*, the deed of trust in this case was breached by a general receiver's appointment. But as discussed in section II(C) below, the deed of trust was not breached because the receiver was appointed by agreement of the parties. Thus, this argument is unavailing.

Third, Campadore argues that the Guarantors were not named as parties in the separate receivership action and did not have the opportunity to appear or defend, whereas the guarantor in *Umpqua Bank* was a party to the separate receivership action who elected not to appear in the proceedings. Campadore claims that *Umpqua Bank* is therefore distinguishable. We disagree.

RCW 7.60.190(2) provides that "[a]ny person having a claim against or interest in any estate property or in the receivership proceedings may appear in the receivership." And a "party in interest has a right to be heard with respect to all matters affecting the person, whether or not the person is joined as a party to the action." RCW 7.60.190(2). RCW 7.60.260(2)(ii) states that the superior court "may order" a receiver's sale free and clear of liens and rights of redemption, whether or not the sale proceeds will satisfy all claims, unless the property owner or a creditor with an interest in the property files an opposition.

The premise of Campadore's alleged distinction—that the Guarantors could not appear or defend in the receivership action—fails because the Guarantors were interested parties with the right to appear and be heard. *See* RCW 7.60.190(2). Further, the Guarantors had the opportunity to appear and defend, and at least one of them actually participated in the sale authorization hearing. When the receiver moved to authorize the property's sale, William Riley filed an objection to the sale price as "one of the owners and guarantors of Voight Creek." CP at 199. The superior court considered and was unpersuaded by this objection.

Because Campadore is incorrect that the Guarantors lacked the opportunity to appear or defend, this asserted reason for distinguishing *Umpqua Bank* fails.[5]  None of Campadore's alleged distinctions are persuasive; accordingly, we adhere to our holding in *Umpqua Bank*.

## C.  DEED OF TRUST BREACHED BY GENERAL RECEIVERSHIP

Campadore briefly argues that Union Bank breached the deed of trust when it had a general receiver sell the Orting property so that Union Bank had no right to a deficiency judgment and the trial court properly granted the Guarantors' summary judgment motion.  We reject this argument.

It is true that the deed of trust provided for a custodial receiver and not a general receiver. But Campadore's argument overlooks that Voight Creek and Union Bank stipulated to a general receiver's appointment in an Agreed Order, which authorized the general receiver to sell the Orting property subject to the superior court's approval.  Voight Creek stipulated to the general receiver's appointment because the appointment was "in the best interest of" the parties.  CP at 166, 186. Further, Campadore fails to explain why, even if a general receiver's appointment breached the deed of trust, Union Bank should be precluded from bringing a deficiency judgment against the Guarantors.

It is undisputed that Voight Creek and Union Bank agreed to a general receiver's appointment.  The trial court erred insofar as it concluded that Union Bank breached the deed of

---

[5] Other than as a reason to distinguish *Umpqua Bank*, Campadore argues that "standing" is a "red-herring[]" that is irrelevant to his appeal.  Br. of Resp't at 20.  Despite this disclaimer, Campadore briefly argues that the Guarantors could not participate in the receivership proceedings because only a property owner or creditor with an interest in the property can object to a receiver's sale. Campadore is incorrect.  RCW 7.60.260(2)(ii) provides that a superior court "may" authorize a sale free and clear of liens and rights of redemption "unless" the property owner or an interested creditor objects.  RCW 7.60.260(2).  The exception does not say that *only* the property owner or an interested creditor may object.

trust and therefore that Union Bank could not obtain a deficiency judgment. As discussed above, the argument that a deficiency judgment is not available after a receiver's sale fails as well. For these reasons, we hold that the trial court erred as a matter of law when it granted summary judgment for the Guarantors. Accordingly, we reverse the trial court's order granting the Guarantors' summary judgment motion.[6]

### III. DENIAL OF UNION BANK'S SUMMARY JUDGMENT MOTION

We next determine whether the superior court erred when it denied Union Bank's summary judgment motion. Campadore claims that the superior court properly denied Union Bank's motion. He argues that a deficiency judgment was not allowed following a general receivership, that factual issues remained, that determining the property's value was an "inherently factual" matter, and that Union Bank had not brought an unjust enrichment claim. As discussed above, Campadore's deficiency judgment argument fails. We reject Campadore's remaining arguments, other than his unjust enrichment claim argument, and hold that the superior court erred when it denied Union Bank's summary judgment motion.

### A. NO FACTUAL ISSUES OR INHERENTLY FACTUAL DETERMINATIONS

Campadore argues that genuine issues of material fact related to the Orting property's value preclude Union Bank's summary judgment motion. Campadore further contends that the superior

---

[6] At oral argument, Campadore claimed for the first time that due to lack of notice of the superior court's approval of the receiver's sale, his due process right under article I, section 3 of the Washington Constitution had been denied. Wash. Court of Appeals oral argument, *MUFG Union Bank v. Campadore*, No. 47755-6-II (Dec. 15, 2016), at 15 min., 56 sec. to 16 min., 10 sec. (on file with court). We decline to consider Campadore's constitutional due process argument, which was not addressed in his briefing. *See State v. Kirwin*, 137 Wn. App. 387, 394, 153 P.3d 883 (2007), *aff'd*, 165 Wn.2d 818, 203 P.3d 1044 (2009).

court was required to make "inherently factual" findings regarding the property's fair value before it calculated the amount of the deficiency judgment. These arguments fail.

1.    NO GENUINE ISSUE OF FACT

Campadore claims that there is a genuine issue of fact as to the deficiency judgment amount because the property should have been sold for $1,775,000 rather than $360,000. We disagree.

A superior court's sales order binds any person with an "interest in" the receivership estate and actual knowledge of the receivership.[7] RCW 7.60.190(4). Here, the Guarantors comprised all of Voight Creek's members. After Voight Creek stipulated to the general receiver's appointment, three of the five Guarantors signed the amended Agreed Order on Voight Creek's behalf. And each Guarantor was served with the Agreed Order and notice of receivership. Further, on behalf of the owners and Guarantors, William Riley objected to the receiver's sale price after receiving notice of the receiver's motion to authorize the Orting property's sale. None of the Guarantors appealed the order authorizing the sale. From these undisputed facts, it is apparent that the Guarantors had actual knowledge of the receivership and thus are bound by the sale order under RCW 7.60.190(4).

---

[7] Campadore argues that whether the receiver's sale bound the Guarantors is, similarly to the standing argument, a "red-herring[]" that is irrelevant to this appeal because it has no bearing on whether Union Bank could seek a deficiency judgment. Br. of Resp't at 20. To the contrary, the binding effect of the receiver's sale resolves Campadore's argument that genuine issues of fact regarding the deficiency judgment's amount barred the superior court from granting Union Bank's summary judgment motion.

Because the receiver's sale price, which established the deficiency judgment's amount, bound the Guarantors, Campadore's argument that there are genuine issues of material fact regarding the deficiency judgment's amount lacks merit.[8]

2.     NO "INHERENTLY FACTUAL" DETERMINATIONS REQUIRED

Campadore asserts that inherently factual issues prevented the trial court from granting Union Bank's summary judgment motion because the trial court had to determine the Orting property's fair value. This argument fails.

While the deed of trust act provides for a fair value hearing after a nonjudicial foreclosure, *see* RCW 61.24.100(5), the receivership statute does not provide such a right. And Campadore fails to provide legal authority to support his argument that the receivership statute requires such a hearing. Because Campadore fails to show, as a matter of law, that the sale price of the Orting property was not the appropriate figure from which to calculate the deficiency judgment, we reject Campadore's argument. And because Campadore cannot now dispute the receiver's sale price, which was binding, the superior court erred when it denied Union Bank's summary judgment motion.[9]

---

[8] Even if we considered Campadore's argument, Campadore fails to show a genuine issue of material fact regarding the property's value. Campadore relies upon William Riley's objection to the sale price (based on William Riley's independent "market analysis") before the receiver's sale and Chuck Sundsmo's declaration. But the superior court considered and rejected William Riley's claim when it authorized the sale for $360,000, and William Riley did not appeal the sales order. Further, Sundsmo's offer was uncontrovertedly for $360,000. Thus, Campadore does not show a genuine factual issue that the property's value was greater than $360,000, and his argument must fail.

[9] Union Bank argues also that the superior court should have granted summary judgment in its favor because of the absolute and unconditional waivers signed by the Guarantors. We do not reach the merits of Union Bank's waiver argument because we hold in Union Bank's favor on other grounds.

## B. UNJUST ENRICHMENT

Campadore argues that Union Bank improperly sought summary adjudication of an unjust enrichment claim not within its complaint. We agree.

A party may move for summary judgment upon "all or any part" of the claim, counterclaim, or cross claim upon which the party seeks to recover. CR 56(a). But in its summary judgment motion, Union Bank argued that it was entitled to summary adjudication of an unjust enrichment claim, although Union Bank had not yet brought any such claim. Union Bank may not move for summary judgment upon a claim it has yet to even assert. *See* CR 56. Accordingly, although we reverse the superior court's ruling denying Union Bank's summary judgment motion, we note that the motion was properly denied insofar as the motion requests adjudication of an unjust enrichment claim not pleaded.

## IV. APPELLATE ATTORNEY FEES

Union Bank requests its appellate attorney fees under the guaranties' provisions permitting recovery of all attorney fees incurred in enforcing the guaranties. We award an appellant its attorney fees only if authorized by contract, statute, or a recognized ground of equity. *Union Bank NA v. Blanchard*, 194 Wn. App. 340, 364, 378 P.3d 191 (2016). In *Blanchard*, Division One noted that the guaranties provided for the guarantors to pay the bank's attorney fees incurred in enforcing the guaranties and thus authorized an appellate fee award to the bank. 194 Wn. App. at 364. The guaranties here contain the same provision. Because Union Bank has established a right to enforce the guaranties, we award Union Bank its reasonable appellate attorney fees.

No. 47755-6-II

We reverse the superior court's rulings granting summary judgment for the Guarantors and denying summary judgment for Union Bank and remand to enter summary judgment in Union Bank's favor.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

BJORGEN, C.J.

MELNICK, J.