# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| CITIMORTGAGE, INC., | No. 53819-9-II |
| Respondent, | |
| v. | |
| PAUL A. MOSELEY, | |
| Appellant, | |
| MICHELLE L. MOSELEY; LUDLOW MAINTENANCE COMMISSION; DOES 1-10 INCLUSIVE; UNKNOWN OCCUPANTS OF THE SUBJECT REAL PROPERTY; PARTIES IN POSSESSION OF THE SUBJECT REAL PROPERTY; PARTIES CLAIMING A RIGHT TO POSSESSION OF THE SUBJECT PROPERTY; ALL OTHER UNKNOWN PERSONS OR PARTIES CLAIMING ANY RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN THE REAL ESTATE DESCRIBED IN THE COMPLAINT HEREIN, | UNPUBLISHED OPINION |
| Defendants. | |

GLASGOW, J.—Paul A. Moseley appeals the trial court's denial of his motion to dismiss an order of sale in a foreclosure. He claims CitiMortgage Inc. was not the proper plaintiff to proceed with foreclosure because CitiMortgage transferred servicing of Moseley's mortgage loan to Central Loan Administration & Reporting (Cenlar). Moseley also claims Michelle L. Moseley,[1]

---

[1] Because Michelle Moseley shares a last name with appellant, we refer to her by her first name for clarity.

his ex-wife, was not a proper defendant in the foreclosure action because she entered into a settlement agreement with CitiMortgage.

Moseley fails to show that CitiMortgage is no longer the holder of the note with standing to enforce it. Moseley also fails to show how the settlement agreement between CitiMortgage and Michelle precludes the foreclosure and sale of the property. We affirm the trial court's order denying Moseley's motion to dismiss the order of sale.

FACTS

Moseley and Michelle are divorced. In December 2016, CitiMortgage filed a complaint for foreclosure against a property owned by the Moseleys. In September 2017, summary judgment was granted in favor of CitiMortgage.

In September 2018, Michelle and CitiMortgage entered into a settlement agreement. Michelle agreed to the judgment of foreclosure issued to CitiMortgage. She further agreed to voluntarily dismiss a motion to vacate the foreclosure judgment and to not oppose an order of sale.

About a month later, in October 2018, CitiMortgage sent a letter to the Moseleys notifying them that CitiMortgage had entered into "an agreement" with Cenlar wherein CitiMortgage would "utilize Cenlar FSB to perform various servicing functions." Resp. Br., App. A. The letter explained that the new servicer, Cenlar, would begin to collect mortgage loan payments from the Moseleys. The letter clarified, "Nothing else about your mortgage loan will change." *Id.*

Cenlar's Loss Mitigation Department then sent a letter in November 2018 informing the Moseleys of possible options for avoiding foreclosure sale. The letter stated, "We're concerned about your missed mortgage payments and want to offer our assistance in resolving your

delinquency." Clerk's Papers (CP) at 004. The letter advised the Moseleys to call, e-mail, or fax to receive assistance.

In June 2019, an order of sale was issued to CitiMortgage. Moseley received a similar letter from Cenlar again in November 2019, stating, "As your mortgage servicer, we are concerned about your recently missed payment(s) and would like to offer our assistance." Br. of Appellant, Attach. A.

Moseley filed a motion to dismiss the order of sale, claiming that CitiMortgage had sold its interest to a third party debt collector and released Michelle from the debt obligation, so neither of these two parties was proper. CitiMortgage filed a response, arguing that it was a rightful party as the holder of the note and Michelle was still an interested party who "per the stipulation agrees to execute any further deed or document that may be necessary to convey clear title." CP at 018. CitiMortgage also asserted that Moseley lacked standing to argue on Michelle's behalf.

The trial court denied Moseley's motion, finding that the order of sale was proper pursuant to RCW 61.12.060 and .090. The clerk's minutes further state that the trial court found Moseley's motion "had no basis and was frivolous." CP at 027. Moseley appeals this order denying his motion to dismiss the order of sale.

CitiMortgage canceled the order of sale that was issued on June 26, 2019. According to CitiMortgage, Moseley "currently has a bankruptcy pending, barring further issuance of any orders of sale." Resp. Br. at 2.

## ANALYSIS

### I. CHALLENGE TO CITIMORTGAGE AS PLAINTIFF

A.      Standing to Foreclose

Moseley contends that "there can only be one servicer that represents the 'Lender' and only the current Servicer has standing to foreclose." Br. of Appellant at 12. Moseley also contends the foreclosure is defective because the Mortgage Electronic Registration System (MERS) is listed as a beneficiary on the deed of trust. We disagree.

There are both enforcement rights and ownership rights associated with promissory notes. "The holder of a note is the party entitled to enforce it." *Villegas v. Nationstar Mortg., LLC*, 8 Wn. App. 2d 878, 889-90, 444 P.3d 14 (citing RCW 62A.3-301), *review denied*, 194 Wn.2d 1006 (2019). "The owner has the right to the economic benefits of the note, such as monthly mortgage payments and foreclosure proceeds." *Brown v. Dep't of Commerce*, 184 Wn.2d 509, 524, 359 P.3d 771 (2015). The Washington Supreme Court has explained that the person entitled to enforce the note "and the owner of the note can be the same entity, but they can also be different entities." *Id.* Washington law provides, "A person may be a person entitled to enforce the instrument *even though the person is not the owner of the instrument.*" RCW 62A.3-301 (emphasis added); *see also Brown*, 184 Wn.2d at 525.

The Deed of Trust Act defines "beneficiary" as "the holder of the instrument or document evidencing the obligations secured by the deed of trust." RCW 61.24.005(2). When a borrower defaults, foreclosure is an available remedy for the proper beneficiary. *Umpqua Bank v. Shasta Apts., LLC*, 194 Wn. App. 685, 697, 378 P.3d 585 (2016).

In October 2018, CitiMortgage notified the Moseleys that it had entered an agreement with Cenlar and Cenlar would be the Moseleys' loan servicer moving forward. The Moseleys were directed to begin making their monthly mortgage payments to Cenlar.

The right to service the loan and collect payments is distinct from the right to enforce the note. The holder of a note may be different from the owner or servicer, and the holder may enforce the note even if it is not the owner or servicer. RCW 62A.3-301; *see also Brown*, 184 Wn.2d at 525. When CitiMortgage notified the Moseleys that Cenlar would be their new loan servicer, the letter stated, "Nothing else about your mortgage loan will change." Resp. Br., App. A. Moseley argues that because CitiMortgage is no longer the loan servicer, it no longer has standing to pursue foreclosure. But since the original lender of the Moseleys' mortgage loan is CitiMortgage, and Moseley has shown only that the loan servicer changed, not the holder of the note, we conclude that Moseley has not shown CitiMortgage lacks standing to foreclose. The fact that MERS may be listed as beneficiary on the deed of trust does not alter this conclusion.

B.      Compliance with Statutory Requirements

Moseley also raises concerns regarding CitiMortgage's compliance with various statutory requirements. According to Moseley, CitiMortgage was required to disclose a transfer of servicing pursuant to 12 U.S.C. § 2605(b)(1), and only Cenlar provided notice. 12 U.S.C. § 2605(b)(1) requires that "[e]ach servicer of any federally related mortgage loan shall notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person." CitiMortgage provided appropriate notice when it sent the Moseleys a written letter in October 2018 detailing its "transfer of servicing" to Cenlar. Resp. Br., App. A. This letter was signed by

both CitiMortgage *and* Cenlar. There is no evidence in the record of an additional assignment or sale requiring notice.

Moseley also alleges that CitiMortgage and Cenlar are engaging in "concurrent actions" in violation of RCW 61.12.120 because CitiMortgage obtained an order of sale and then Cenlar "provided the Appellant a 'loan workout' program." Br. of Appellant at 14. RCW 61.12.120 provides, "The plaintiff shall not proceed to foreclose [their] mortgage while [they are] prosecuting any other action for the same debt or matter which is secured by the mortgage." The law also prohibits the plaintiff from "prosecut[ing] any other action for the same matter while [they are] foreclosing [their] mortgage or prosecuting a judgment of foreclosure." RCW 61.12.120. The Uniform Commercial Code defines "action" to include "recoupment, counterclaim, set-off, suit in equity, and any other proceeding in which rights are determined." RCW 62A.1-201(b)(1).

CitiMortgage sought a judgment of foreclosure. But the record does not show that it is prosecuting any other action against Moseley. The letters Moseley received from Cenlar's Loss Mitigation Department advised him of potential options for avoiding the foreclosure sale. The first letter states, "We're concerned about your missed mortgage payments and want to offer our assistance in resolving your delinquency." CP at 004. Similarly, the second letter begins, "As your mortgage servicer, we are concerned about your recently missed payment(s) and would like to offer our assistance." Br. of Appellant, Attach. A. Cenlar offering to assist Moseley with resolving his delinquency is not the same as CitiMortgage prosecuting another action against Moseley while it is proceeding with a foreclosure. There was no violation of RCW 61.12.120.

Finally, Moseley charges CitiMortgage and Cenlar with "dual tracking" and cites to 12 C.F.R. § 1024.41(k)(5), which he claims governs "the prohibition of this very attempt to bait and

switch the consumer." Br. of Appellant at 14-15. "[D]ual tracking" is "'the unfair practice . . . where foreclosure is initiated despite the borrower's engagement in a loss mitigation process.'" *Cenatiempo v. Bank of Am., N.A.*, 333 Conn. 769, 794, 219 A.3d 767 (2019) (quoting Philip A. Lehman, *Executive Summary of Multistate/Federal Settlement of Foreclosure Misconduct Claims*, NAT'L MORTG. SETTLEMENT 3 (2012), http://www.nationalmortgagesettlement.com/files/NMS_ Executive_Summary-7-23-2012.pdf. According to Moseley, the trial court's ruling permits "a previous Servicer [to] continue pursuing one legal remedy [of foreclosure] while relinquishing its duties to another Servicer pursuing a different remedy [of loss mitigation]." Br. of Appellant at 15.

12 C.F.R. § 1024.41(g) governs loss mitigation procedures, and it includes the general rule that "[i]f a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process . . . a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale," unless certain conditions are met. The regulation cited by Moseley, 12 C.F.R. § 1024.41(k)(5), protects loss mitigation offers that are pending when a transfer of servicing occurs. But here, the transfer of servicing occurred prior to Moseley's receipt of letters from Cenlar's Loss Mitigation Department, and there is no evidence that Moseley ever completed a loss mitigation application. If Moseley did not pursue loss mitigation, then CitiMortgage was not precluded under 12 C.F.R. § 1024.41 from moving for a foreclosure judgment and order of sale. CitiMortgage was not dual tracking.

## II. IMPACT OF SETTLEMENT AGREEMENT

Moseley next argues that the order of sale is invalid because CitiMortgage signed a settlement agreement with Michelle "that clearly binds [CitiMortgage] from any legal action

7

No. 53819-9-II

regarding the participant parties." Br. of Appellant at 16. In the settlement agreement, Michelle agreed to the judgment of foreclosure issued to CitiMortgage, she agreed to voluntarily dismiss her motion to vacate the judgment, and she agreed to not oppose an order of sale. Moseley does not show how this agreement prevents CitiMortgage from proceeding with the foreclosure and sale. To the extent that Moseley was merely trying to alert the trial court to the settlement agreement's existence, he is precluded from raising any legal claims against CitiMortgage on Michelle's behalf. *See* RCW 2.48.170.

CONCLUSION

We affirm the trial court's order denying Moseley's motion to dismiss the order of sale.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, J.

We concur:

Maxa, P.J.

Cruser, J.

8